# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

DUSTIN SWIGART and SONIA
SCHULTZ, on behalf of themselves and
others similarly situated,                                        Case No. 1:11-cv-88

       Plaintiffs,
                                                                 Judge Timothy S. Black

vs.

FIFTH THIRD BANK,

       Defendant.

## ORDER THAT DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT (Doc. 32) IS DENIED

This civil action is before the Court on Defendant's motion for partial summary judgment (Doc. 32) and the parties' responsive memoranda (Docs. 38, 126, 137, 140).[1] Also before the Court is a Statement of Interest by the United States (Doc. 122) and its supplemental authority (Doc. 139).

## I.  INTRODUCTION AND PROCEDURAL POSTURE

Plaintiffs filed this action on behalf of themselves and all current and former Mortgage Loan Officers ("MLO") employed by Defendant Fifth Third Bank since February 11, 2008 (the "Proposed FLSA Collective Plaintiffs").[2] Plaintiffs claim that

---

[1] Plaintiffs seek oral argument on this motion.  (Doc. 126 at 1).  Local Rule 7.1(b)(2) anticipates oral argument if it "is deemed to be essential to the fair resolution of the case because of its public importance or the complexity of the factual or legal issues presented."  Here, the Court finds, however, that the pleadings are clear on their face and that oral argument is not necessary.

[2] Plaintiffs also bring this action on behalf of themselves and all present and former MLO's employed by Defendant in the State of Ohio since February 11, 2008 (the "Proposed Ohio Subclass Plaintiffs").

Defendant improperly classified them as exempt from the overtime requirements of the Federal Fair Labor Standards Act ("FLSA"), and its associated regulations, and the Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act").  Specifically, Plaintiffs claim that Defendant violated the FLSA and Ohio law when it failed to pay them overtime compensation when they worked more than 40 hours in a workweek.

Plaintiffs filed a motion for conditional certification and judicial notice, requesting that the Court conditionally certify the case as a collective action and authorize Plaintiffs to send notice to all MLOs employed by Defendant within three years of the date the motion was filed.  (Doc. 31).  Defendant opposed Plaintiffs' motion by moving for partial summary judgment on its Section 259 Good Faith defense.  (Docs. 32, 33).  The Court granted Plaintiff's motion for conditional certification and judicial notice, deferring consideration of Defendant's motion for partial summary judgment, and ordering a limited discovery period.  (Docs. 39, 40).

During the limited discovery period, Plaintiffs obtained documents from Defendant regarding its Good Faith defense and deposed three witnesses: (1) Mark Wilson, Defendant's 30(b)(6) corporate designee; (2) Stephanie Bauer Daniel, Defendant's in-house counsel who was involved in its classification decision; and (3) Joseph Treinen, Defendant's former Vice-President of Retail Mortgage Lending and the management employee on whom Mark Wilson relied to determine the job duties of Defendant's MLOs.  (Doc. 126, Ex. 2 at ¶ 3).  The limited discovery period is now closed, and Defendant's motion for partial summary judgment is ripe for review.

-2-

In its motion for partial summary judgment, Defendant argues that when classifying the MLOs as exempt, it relied in good faith on a series of relevant regulatory pronouncements of the U.S. Department of Labor ("DOL"), including 2004 revisions to the "white-collar" exemption regulations (the "2004 regulations") and an Opinion Letter issued by the DOL on September 8, 2006 ("the 2006 Opinion Letter").  Defendant also relied upon the advice of counsel regarding its evaluation of the MLO position and interpretation of the relevant DOL regulations.  Therefore, Defendant maintains that Plaintiffs cannot recover for any claim to overtime compensation after September 8, 2006, and because Plaintiffs' claims for compensation do not begin until February 11, 2008, Plaintiffs cannot recover any overtime compensation as a matter of law, and such claims should be dismissed.

Defendant also asks the Court to invalidate the DOL's recent Administrator's Interpretation 2010-1 ("AI 2010-1"), which rescinded the 2006 Opinion Letter and held that MLOs do not qualify for the administrative exemption.

## II.     RELEVANT FACTUAL BACKGROUND[3]

Plaintiffs are joined in this case by approximately 356 additional current and former MLOs. (Doc. 126, Ex. 2 at ¶ 5). Defendant hires, promotes, ranks, terminates, and pays its MLOs based on their sales production. (Doc. 126, Ex. 11 at 74-77). In fact, Defendant paid MLOs based on the profitability of their loans, meaning that a MLO would receive more commission if she sold a loan to a borrower at an interest rate above the rate set by Defendant. (*Id.* at 120-121).

MLOs report to an area sales manager. (Doc. 126, Ex. 11 at 18-24). Area sales mangers are responsible for managing and coaching MLOs on sales, sales processes, and how to improve sales results. (*Id.* at 21-22). Area sales managers also make sales calls with MLOs so that they can provide immediate feedback on sales presentations. (*Id.* at 21-22). Area sales managers are paid based on their own loan production as well as the loan production of the MLOs under their supervision. (*Id.* at 22).

Since 2005, Defendant has provided each of its MLOs with a "MLO Playbook." (Doc. 126, Ex. 11 at 63; Doc. 131, Exs. 2-3). The MLO Playbook explains all of the things that a MLO needs to do in order to be successful. (*Id.*) Throughout the MLO

---

[3] *See* Doc. 32, Ex. 1 and Doc. 126, Ex. 1. Defendant failed to "set forth in separately numbered paragraphs a concise statement of each material fact as to which the moving party contends there is no genuine issue to be tried." *See* Chief Judge Dlott's Standing Order Governing Civil Motions for Summary Judgment available at: http://www.ohsd.uscourts.gov/ judges/dlott/Standard%20Order.pdf. Instead, Defendant included numerous material facts in each numbered paragraph, making the non-conforming-to-rule pleading exceedingly difficult to decipher.

Playbook, Defendant uses the phrase "non-negotiable" to describe a policy that must be followed. (*Id.* at 57-58). Put differently, non-negotiable means "this is something that really is not for discussion. This is our process and how we are going to go about it." (Doc. 126, Ex. 11 at 57-58; Doc. 131, Exs. 2-3). Among the non-negotiable policies is the "One Bank" strategy, which is an addendum to the MLO Playbook. (Doc. 126, Ex. 11 at 57-58; Doc. 131, Exs. 2-3). The One Bank strategy "works to compliment [Defendant's] existing Mortgage Sales Process." (*Id.*) The One Bank strategy has its own "One Bank Sales Process" which is a non-negotiable accompaniment to Defendant's existing mortgage sales process, and provides as follows:

> (1) Prepare and prospect (lead generation and lead conversion);
>
> (2) Assess needs;
>
> (3) Recommend solutions;
>
> (4) Close the sale and implement solutions; and
>
> (5) Follow through.

(Doc. 126, Ex. 11 at 58-59; Doc. 131, Exs. 2-3). In the sale of mortgages, the One Bank Sales Process extends from the initial meeting with the customer to the closing and beyond. (Doc. 126, Ex. 11 at 72; Doc. 131, Ex. 3 at 470-474). MLOs are only paid commission on a loan when it closes and, as a result, MLOs view the entire process – from sales call, to obtaining a loan application, to the closing – as a "sale." (Doc. 126, Ex. 11 at 73-74). Defendant incorporates this expectation into its weekly "MLO Sales

Results" reports, which track the number of closings attributable to each MLO.  (Doc. 131, Ex. 3 at 647-648).

Defendant required its MLOs to "cross-sell" additional bank products and services such as checking accounts and credit cards to every customer.  (Doc. 126, Ex. 11 at 53-54; Doc. 131, Ex. 3 at 448, 466).  Cross-selling is another one of Defendant's non-negotiable policies.  (*Id.* at 458).  Cross-selling is important to Defendant because "it costs institutions five times more to attract a new client than it does to cross sell to an existing one," and because "[t]he more products a customer has with [Defendant], the less likely they are to leave."  (*Id.* at 465).  Defendant encouraged cross-sales with a referral program called "Team Fifth Third."  (Doc. 126, Ex. 11 at 53-54; Doc. 131, Ex 3 at 467).  Under the Team Fifth Third referral program, MLOs received additional compensation for each successful cross-sale.  (*Id.*)

Defendant also trained its MLOs in sales techniques, and even hired outside vendors to provide mortgage sales training.  Since 2009, Defendant has partnered with a company called XINNIX to provide sales productivity training.[4]  (Doc. 126, Ex. 11 at 80-81, 16-18).  The XINNIX training combined an eight-week internet training course with weekly conference calls and homework assignments.  (*Id.* at 81; Doc. 131, Exs. 4-5).

The first four weeks of the course focus on the "Four Pillars of Success," which are: (1) they know you (marketing); (2) they like you (relationship); (3) they trust you

---

[4]  XINNIX's website notes: "XINNIX, The Mortgage Academy of Excellence, provides the mortgage industry's most proven and effective sales development programs in the country."  *See* http://www.xinnix.com/aboutus (last visited on April 11, 2012).

(follow-through); and (4) you make them money (deliver). (Doc. 131, Ex. 4 at 6249).
The course materials also instruct MLOs on how to overcome their own "sales call
reluctance." (*Id*. at 6306). Part of the training on overcoming sales call reluctance
includes a live phone test. (*Id*., Ex. 7). Using a computer program, the MLO is judged on
their ability to sell, and the results of the test are reviewed in the XINNIX course. (*Id*.,
Ex. 4 at 6316; Ex. 7). The course materials also include scripts teaching MLOs how to
overcome objections (*Id*. at 6267-6268; Ex. 5 at 5781), how to speak with receptionists
(Ex. 5 at 5786), how to ask someone out to lunch (*id*.), how to close a sale (*Id*. at 5794),
how to ask for referral business (*Id*. at 5799), and how to pitch sales to current borrower
clients (*Id*. at 5801). In the event that a MLO did not know what to say in a voicemail
message, the MLO Playbook provides specific instructions. (*Id*., Ex. 3 at 2595). A prior
version of the MLO Playbook contained a message to the MLOs which explains how
important Defendant considered these everyday tasks to be to the MLOs' sales: "An
outdated voicemail message could mean death to a sale." (*Id*., Ex. 8).

When Mark Wilson joined Defendant as its Human Resources Business Partner in
October 2005, he had no experience in the financial services industry. (Doc. 126, Ex. 11
at 8-9, 87). Mr. Wilson never worked as a MLO or supervised MLOs for Defendant or
any other company. (*Id*. at 29-30). The basis of Mr. Wilson's knowledge of MLOs' job
duties stems from shadowing a MLO for half a day, and later in his tenure, relying on
Joseph Treinen, a former MLO. (*Id*. at 29, 92, 102).

Upon his hire, Mr. Wilson began an audit of the MLO position and applicable law to determine if Defendant's MLOs were appropriately classified as exempt administrative employees.  (*Id.* at 35, 84-85).  Mr. Wilson conducted the audit with the help of in-house counsel, Defendant's compensation department, and senior management from the mortgage line of business (particularly Joe Treinen).  In-house counsel retained the law firm of Mayer Brown as outside counsel to confirm that the decision that Mr. Wilson reached in his audit was proper.  (Doc. 126, Ex. 11 at 124-26).  Based on two sets of documents (the MLO job description (*Id.*, Ex. 7) and the MLO Playbook (*Id.*, Ex. 3), Mayer Brown concluded that Defendant's MLOs could be properly classified as exempt under either the administrative or outside sales exemptions.  (Doc. 126, Ex. 13 at 28, 44-45; Ex. 1 - Mayer Brown Memo).  Mayer Brown's analysis of the administrative exemption and the 2006 Opinion Letter noted that "in order to satisfy the FLSA administrative exemption as set forth in the [] Opinion Letter, Fifth Third Bank must be able to show that its [MLOs] spend less than half their working time engaged in "customer specific sales activity."  (Ex. 1).  According to Mr. Wilson, he relied on Mr. Treinen to confirm that this was true.  (Doc. 126, Ex. 11 at 102).

The MLO position maintained its administratively exempt classification until it was formally revisited after March 24, 2010, when the DOL issued its Administrator's Interpretation 2010-1.  (Doc. 32, Ex. 6 at ¶ 12).  Mr. Wilson and members of Defendant's senior management made the decision to reclassify the MLO position as nonexempt, and to restructure the compensation program for the MLO position.  (*Id.* at ¶ 13).

-8-

Defendant's human resources personnel and management staff undertook an interactive process with MLOs, to identify time worked by each in excess of forty hours in any week since March 24, 2010.  (*Id.* at ¶ 14).  As of January 3, 2011, all individuals currently employed by Defendant as MLOs have been reclassified as nonexempt from the FLSA's overtime requirements and have been offered and/or received overtime pay for any time worked in excess of forty hours in any week since March 24, 2010.  (*Id.*)

### III.    STATUTORY AND REGULATORY BACKGROUND[5]

The FLSA generally requires covered employers to pay minimum wages and overtime compensation for hours of work exceeding 40 in a workweek at a rate of one and one-half times an employee's regular rate of pay.  29 U.S.C. §§ 206(a), 207(a)(1).  Exempt from the minimum wage and overtime compensation provisions of the FLSA, however, is any employee who is "employed in a bona fide . . . administrative . . . capacity."  29 U.S.C. § 213(a)(1).  Any employees that qualify as administratively exempt, therefore, are not entitled to overtime compensation under the FLSA.

The Wage and Hour Division ("WHD") of the Department of Labor ("DOL") administers and enforces the FLSA, and issues regulations and interpretations of those regulations.  In 2004, the WHD revised its regulations governing administratively exempt employees under the FLSA.  29 C.F.R. §§ 541.200-541.204.  Moreover, the WHD has issued three Opinion Letters and one Administrator's Interpretation – two issued prior to

---

[5]  As adopted in large part from *Lewis v. Huntington Nat'l Bank*, No. 11cv58, 2012 U.S. Dist. LEXIS 32166, at *11-27 (S.D. Ohio Mar. 12, 2012).

the regulation revisions and two after – interpreting its regulations to determine the status of MLOs under the administrative exemption.[6]

### A.     The 1999 Opinion Letter

In May of 1999, the WHD issued an Opinion Letter in response to a request regarding the exempt status of MLOs under § 213(a)(1).  Opinion Letter, 1999 DOLWH LEXIS 54 (Dep't of Labor May 17, 1999) ("1999 Opinion Letter").  The MLOs employed by the requestor of the Opinion Letter were responsible for developing new business for their employer by contacting prospective borrowers and referral sources; evaluating the borrowers' financial situation and providing a pre-qualification letter; consulting with borrowers to obtain the best loan package available; working with lenders in selecting loan programs for borrowers; consulting with borrowers regarding desirability of locking in a given interest rate; assisting the borrowers in preparing a loan application; presenting and obtaining borrowers' signatures; submitting loan applications to the central office; and consulting with loan processors or borrowers to resolve any problems.  *Id.* at 1–2. The MLOs were subject to minimal supervision by branch managers.  *Id.* at 2.

---

[6] Prior to 2010, the DOL communicated its interpretations of the FLSA and its regulations by issuing public Opinion Letters in response to questions submitted by private parties.  The WHD changed its practice in 2010, and started issuing Administrator's Interpretations "when determined, in the Administrator's discretion, that further clarity regarding the proper interpretation of a statutory or regulatory issue is appropriate."  Wage and Hour Division, Rulings and Interpretations, Administrator Interpretations. Http://www.dol.gov/whd/opinion/opinion.htm (Last visited April 8, 2012).  The WHD explained that it believed "this will be a much more efficient and productive use of resources than attempting to provide definitive opinion letters in response to fact-specific requests submitted by individuals and organizations, where a slight difference in the assumed facts may result in a different outcome."  *Id.*

The DOL concluded that these mortgage loan officers did not qualify for the administrative exemption because: (1) they carried out the company's day-to-day activities rather than determining the overall course and policies of the business; and (2) they did not exercise discretion and independent judgment. *Id.*

### B.     The 2001 Opinion Letter

A letter was filed in response to the 1999 Opinion Letter, requesting that the WHD reconsider its finding in the 1999 Opinion Letter that MLOs were not exempt "in light of the advisory duties they perform on behalf of their employer's customers." Opinion Letter, 2001 DOLWH LEXIS 5, at *1 (Dep't of Labor Feb. 16, 2001) ("2001 Opinion Letter"). Specifically, the response letter pointed out that the MLOs worked with borrowers to create loan packages that best met the goals of the borrowers while complying with various lender requirements. *Id.* The MLOs selected from a wide range of loan packages and supervised the processing of the transaction until closing. *Id.* In order for the MLO to perform these duties, he had to understand a customer's credit history and financial goals. *Id.*

A member of the Fair Labor Standards Team found that while it agreed the primary duties of the MLOs were the performance of office or nonmanual work directly related to management policies or general business operations, MLOs were not exercising the necessary discretion and independent judgment to be considered administratively exempt. *Id.* at 2-3. The WHD explained that it appeared that the MLOs were "using their skill and knowledge in applying techniques, procedures, and/or specific standards (such

as loan-to-value ratios and debt ratios) in choosing already established loan packages," and such tasks did not demonstrate the requisite exercise of discretion and independent judgment to categorize the MLOs as administratively exempt. *Id.*

### C.     The 2004 Revisions to the WHD's Regulations

The revisions to the regulations addressing administratively exempt employees under the FLSA became effective on August 23, 2004. *See* Defining and Delimiting the Exemptions for Executive, Administrative, Professional, Outside Sales and Computer Employees, 69 Fed. Reg. 22122 (Apr. 23, 2004) (to be codified at 29 C.F.R. pt 541) (hereinafter "Defining the Exemptions"). Under the revised 29 C.F.R. § 541.200, an administratively exempt employee under the FLSA is one who is:

(1)     compensated on a salary or fee basis at rate of not less than $455 per week;

(2)     whose primary duty is "the performance of office or non-manual work directly related to the management or general business operations of the employer or employer's customers"; and

(3)     whose primary duty also includes "the exercise of discretion and independent judgment with respect to matters of significance."[7]

Section 541.201(a) explains that to perform "work directly related to the management or general business operations," an employee "must perform work directly related to assisting with the running or servicing of the business, as distinguished, for example, from working on a manufacturing production line or selling a product in a retail or service establishment." This can include work in finance, and "employees acting as advisers or consultants to their employer's clients or customers (as tax experts or financial consultants, for example) may be exempt." 29 C.F.R. §§ 541.201(b), (c).

---

[7] This language was already contained in the regulations prior to the 2004 revisions.

An employee exercises discretion and independent judgment when he or she compares and evaluates possible courses of conduct, and acts or makes a decision after considering various possibilities. 29 C.F.R. § 541.202(a). Whether an employee is exercising discretion and judgment is a fact-specific inquiry. 29 C.F.R. § 541.202(b). Nevertheless, factors to consider are whether the employee:

(1)    has authority to formulate, affect, interpret, or implement management policies or operating practices;

(2)    carries out major assignments in conducting the operations of the business;

(3)    performs work that affects business operations to a substantial degree, even if the employee's assignments are related to operation of a particular segment of the business;

(4)    has authority to commit the employer in matters that have significant financial impact;

(5)    has authority to waive or deviate from established policies and procedures without prior approval;

(6)    has authority to negotiate and bind the company on significant matters;

(7)    provides consultation or expert advice to management;

(8)    is involved in planning long- or short-term business objectives;

(9)    investigates and resolves matters of significance on behalf of management; and

(10)   represents the company in handling complaints, arbitrating disputes or resolving grievances.

*Id.* The exercise of discretion and independent judgment does not include "clerical or secretarial work, recording or tabulating data, or performing other mechanical, repetitive, recurrent or routine work." 29 C.F.R. § 541.202(e).

Finally, § 541.203 was added as a new provision to the regulations in 2004 that provides "administrative exemption examples." Of import here is subsection (b), which provides:

-13-

> Employees in the financial services industry generally meet the duties requirements for the administrative exemption if their duties include work such as collecting and analyzing information regarding the customer's income, assets, investments or debts; determining which financial products best meet the customer's needs and financial circumstances; advising the customer regarding the advantages and disadvantages of different financial products; and marketing, servicing or promoting the employer's financial products. *However, an employee whose primary duty is selling financial products does not qualify for the administrative exemption.*

29 C.F.R. § 541.203(b) (emphasis added).

The administrative exemption was not available for employees who had a "'primary duty to sell [the company's] lending products on a day-to-day basis' and 'failed to exercise discretion and independent judgment.'" Defining the Exemptions, 69 Fed. Reg. at 22145 (quoting *Casas v. Conseco Fin. Corp.*, No. 00-1512, 2002 U.S. Dist. LEXIS 5775, at *9 (D. Minn. Mar. 31, 2002)).

### D.    The 2006 Opinion Letter

The WHD issued another Opinion Letter in 2006, this time signed by the WHD Administrator himself, addressing whether certain MLOs were administratively exempt from the minimum wage and overtime compensation provisions of the FLSA. Opinion Letter, 2006 DOLWH LEXIS 42, at *1, 19 (Dep't of Labor Sept. 8, 2006) ("2006 Opinion Letter"). This time, however, the WHD found that the MLOs qualified under the exemption. *Id.* at 12. The MLOs at issue in the 2006 Opinion Letter worked with employer's customers to assist them in identifying and securing mortgage loans. *Id.* at 4. The MLOs did this by responding to customer leads; collecting and analyzing customer

financial information; assessing customer financial circumstances to determine if the customer would qualify for a loan; and advising the customer about the risks and benefits of the loan alternatives. *Id.* Some of the MLOs used technological tools to assist in communicating a loan prequalification, loan preapproval, or qualified loan approval. *Id.* at 5. The MLOs sales activities were described as "customer-specific persuasive sales activity, such as encouraging an individual potential customer to do business with his or her employer's mortgage banking company rather than a competitor, or to consider the possibility of a mortgage loan if they have not expressed prior interest." *Id.*

Based on this description of MLO job duties provided, the WHD concluded that the MLOs had "a primary duty other than sales, as their work includes collecting and analyzing a customer's financial information, advising the customer about the risks and benefits of various mortgage loan alternatives in light of their individual financial circumstances, and advising the customer about avenues to obtain a more advantageous loan program." *Id.* at 12-13. The WHD noted, however, that if a MLO's primary duty was selling mortgage loans, the MLO would not qualify under the exemption. *Id.* at 13, n.3. In other words, the 2006 Opinion Letter was based on the specific facts presented to it in the request.

### E.    The 2010 Administrator's Interpretation

In March of 2010, the WHD issued an Administrator's Interpretation regarding the application of the administrative exemption to employees who perform the typical job duties of a MLO. Administrator's Interpretation No. 2010-1, 2010 DOLWH LEXIS 1, at

*1 (March 24, 2010) ("2010-1 AI"). The WHD found that the primary duty of a MLO is making sales on behalf of his or her employer, which is not directly related to the management or general business operations of the employer or the employer's customers, and, therefore, MLOs did not meet the requirements under the administrative exemption. *Id.* at 30. The WHD withdrew the 2006 Opinion Letter "[b]ecause of its misleading assumption and selective and narrow analysis." *Id.* The 2001 Opinion Letter was also withdrawn because the member of the Fair Labor Standards Team had concluded, incorrectly, that the primary duties of the MLO were office and nonmanual work directly related to management policies or generally business operations (even though the ultimate conclusion of the Opinion Letter was that MLOs were not administratively exempt). *Id.*

The WHD examined federal case law to determine the typical job duties of an MLO, and found that those duties included the following:

(1) Receiving internal leads and contacting potential customers, or receiving contacts from customers;
(2) Collecting required financial information from customers including information about income, employment history, assets, investments, home ownership, debts, credit history, assets, investments, home ownership, debts, credit history, prior bankruptcies, judgments, and liens;
(3) Running credit reports;
(4) Entering collected financial information into a computer program that identifies which loan products may be offered to customers;
(5) Assessing the loan products identified, discussing with the customers the terms and conditions of particular loans, trying to match the customers' needs with one of the company's loan products;
(6) Compiling customer documents for forwarding to an underwriter of loan processor; and
(7) Finalizing documents for closing.

-16-

*Id.* at 3-4. The WHD explained that the "case law and regulatory distinction between servicing the business and routine sales work requires an examination of whether an employee who performs the typical job duties of a mortgage loan officer has the primary duty of making sales." *Id.* at 13. The WHD reasoned that the MLOs typical job duties indicate that their primary duty is making sales. *Id.* at 15–16. The WHD pointed out that "employers often train their mortgage loan officers in sales techniques and evaluate their performance on the basis of their sales volume." *Id.* at 18. Typical day-to-day duties of MLOs "do not relate to the internal management or general business operations of the company," and fall "squarely on the production side of the business." *Id.* at 23.

## III. STANDARD OF REVIEW

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action. *Celotex*, 477 U.S. at 323. All facts and inferences must be construed in a light most favorable to the party opposing the motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248 (1986).

## IV.  ANALYSIS

### A.  Good Faith Defense

Defendant argues that it is shielded from liability for misclassifying its MLOs as administratively exempt employees under Section 259, because it relied in good faith on the 2006 Opinion Letter.

To establish a good faith affirmative defense under Section 259, an employer must show that it acted in: (1) reliance on; and (2) conformity with a WHD regulation, Opinion Letter, or Administrator's Interpretation; and (3) in good faith.  29 U.S.C. § 259(a); *Frank v. McQuigg*, 950 F.3d 590, 598 (9th Cir. 1991).  This Circuit has explained that in close cases, courts should consider "the reasonableness of the employer's actions in light of the administrative interpretation in question."  *Marshall v. Baptist Hosp., Inc.*, 668 F.2d 234, 238 (6th Cir. 1981).  However, this Court is also mindful that federal courts have noted that the "burden of proof is a heavy one, since a defense under Section 259 would act as a bar to this proceeding, thereby absolving [the defendant] of liability and penalties for any past FLSA violations."  *Figas v. Horsehead Corp.*, No. 06-1344, 2008 U.S. Dist. LEXIS 87199, at *21 (W.D. Pa. Sept. 3, 2008).

The good faith requirement contains both subjective and objective components. *Id.*  The subjective component requires an employer to show that it had "honesty of

intention and no knowledge of circumstances which ought to put him upon inquiry." *Id.* (quoting 29 C.F.R. § 790.15(a)). However, subjective good faith is not enough – the employer must also satisfy an objective test. In other words, "good faith is not to be determined merely from the actual state of [the employer's] mind." 29 C.F.R. § 790.15(a)). The employer must show that it "acted as a reasonably prudent man would have acted under the same or similar circumstances." *Id.* "By its very nature, the question of good faith is fact intensive and implicates a question of credibility for the trier of fact." *Henchy v. City of Absecon*, 148 F. Supp. 2d 435, 442 (D.N.J. 2001). With regard to conformity, the employer must show that it actually conformed to the regulation, order, ruling, approval, or interpretation. 29 C.F.R. § 790.14(a). "This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it[.]" *Id.* Likewise, the employer must plead and prove "that he actually relied upon it." 29 C.F.R. § 790.16(a).

This Court finds that for reasons explained in detail below, genuine issues of material fact exist as to whether Defendant relied on and conformed to the 2006 Opinion Letter.[8]

---

[8] It is unnecessary to address whether Defendant acted in good faith at this time since Defendant has failed to meet its burden with respect to the first and second elements. If an employer has established that it relied on and acted in conformity with an Opinion Letter, it is usually implied that the employer has also acted in good faith. *Frank*, 950 F.3d at 598 ("The Portal Act and its regulations strongly imply that an employer who relied on and conforms to an Opinion Letter which specifically address him and his circumstances is acting in good faith."). Even if this Court did a close analysis of the good faith element, there is a significant body of evidence upon which a jury could reasonably determine that Defendant was on notice that its actions were not in conformity with the regulations.

-19-

### 1.    *Reliance*

The objective good faith element of the Good Faith defense requires that Defendant prove that in making its decision to classify the MLOs as exempt in reliance upon the 2006 Opinion Letter approval, it "acted as a reasonably prudent man would have acted under the same or similar circumstances." 29 C.F.R. § 790.15(a).

Defendant points out that Mr. Wilson was aware of the 2006 Opinion Letter, reviewed it, consulted with outside counsel, and affirmed that the MLOs at Fifth Third were properly classified as an administratively exempt position because the job duties described in the 2006 Opinion Letter were substantively similar to those performed by the MLOs for Defendant.  (Doc. 137 at 6).  In reliance on this advice, Defendant concluded that the MLO job position complied with the specifications in the 2006 Opinion Letter.

However, there is no evidence that Defendant made an attempt to communicate with its MLOs or their supervisors to determine the MLOs' primary job duties or whether they were actually performing the same job duties as the mortgage loan officers described in the 2006 Opinion Letter.[9]  Instead, Defendant relied on the declaration of Mark

---

[9]  Notably, the last paragraph of the 2006 Opinion Letter states:
> "This opinion is based exclusively on the facts and circumstances described in your request and is given based on your representation, express or implied, that you have provided a full and fair description of all the facts and circumstances that would be pertinent to our consideration of the question presented.  Existence of any other factual or historical background not contained in your letter might require a conclusion different from the one expressed herein."  2006 WL 2792445, at 6.

However, "[a]dministrator interpretations hedged with qualifications, [such as] the caveat that the correct answer depends upon particular circumstances, cannot provide the definitive opinion necessary to raise the statutory bar of section 259."  *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 928 (11th Cir. 1987).

Wilson, who admitted that during his entire career with Defendant, had "maybe" one or two conversations with MLOs regarding their job duties.[10]

Furthermore, the undisputed facts show that Defendant hired, trained, fired, promoted, evaluated, ranked, and paid its MLOs based on their sales of mortgage loans. Defendant assigned sales managers to supervise MLOs and to help them increase their sales and it required MLOs to cross-sell other financial products. Moreover, Defendant issued MLOs a "playbook" informing them that they were required to follow a mortgage loan sales process because each borrower became a part of the MLOs book of business and a potential source of referral business. There is considerable evidence supporting a finding that Defendant considered MLOs to be its "sales force." In fact, Mr. Reinent, the vice-president who had worked as a MLO for Defendant, testified that the primary job duty of MLOs was to sell loans.

Moreover, in the memorandum drafted by Mayer Brown, it notes that some of Defendant's MLOs could be classified as exempt under the "outside sales" exemption, while others could be classified as exempt under the administrative exemption. However, by their very terms, these two exemptions are mutually exclusive – a MLO cannot be simultaneously exempt under the outside sales exemption and the administrative exemption because the former requires the employee to have a primary job duty of sales,

---

[10] Mr. Wilson claims that he relied in part on Mr. Treinen, who had previously worked as a MLO. However, Mr. Wilson's reliance on Mr. Treinen is disputed, because Mr. Treinen testified that the MLOs' primary duty is and was to sell loans, which contradicts Defendant's decision to classify the MLOs as administratively exempt.

whereas that same primary job duty disqualifies an employee from coverage under the latter.  *Compare* 29 C.F.R. § 541.500 with 29 C.F.R. § 541.203(b).  These classifications cannot be rectified.  Still, Defendant reviewed the memorandum, made no further inquiry as to the primary job duties of its MLOs, and classified them as exempt administrative employees.

Therefore, Defendant is unable to satisfy the first element of its affirmative defense at the summary judgment stage.  Although Defendant has provided detailed information about the steps it took to comply with the regulations, there is no explanation or information as to why it failed to address the discrepancies and red flags that were raised in its audit process.  Whether Defendant acted as any reasonably prudent business would have acted under similar circumstances implicates a question of disputed fact, thereby precluding entry of summary judgment.

### 2.    *Conformity*

The Good Faith defense "is not available to an employer unless the acts or omissions complained of were 'in conformity with' the regulation, order, ruling, approval, interpretation, administrative practice or enforcement policy upon which he relied.  This is true even though the employer erroneously believes he conformed with it and in good faith relied upon it; actual conformity is necessary."  29 C.F.R. § 790.14(a).  *See also EEOC v. Home Ins. Co.*, 672 F.2d at 265 ("if there is no conformity, general good faith in other respects cannot save the day").  An employer cannot avail itself of the defense

unless it relied on a DOL interpretation that specifically addresses its circumstances. *Frank*, 950 F.2d at 599. In other words, "[t]he administrative interpretation relied upon must provide a clear answer to the particular situation[.]" *Cole v. Farm Fresh Poultry, Inc.*, 824 F.2d 923, 928.

A reasonable jury could conclude that Defendant has not demonstrated conformity with the 2006 Opinion Letter because Defendant has failed to show that the circumstances described in the Opinion Letter actually match the circumstances at Fifth Third. For example, Defendant's MLO Playbook describes the sales component of the MLOs' job duties completely differently than the 2006 Opinion Letter. The 2006 Opinion Letter states that the sales component of a mortgage loan officer's job duties is limited to "customer-specific sales activity," which is time spent attempting to convince a customer to obtain a loan, with the mortgage loan officer's employer. However, in Defendant's MLO Playbook, the mortgage sales process goes further by including the implementation of solutions. Additionally, where the 2006 Opinion Letter assumes less that 50 percent of the mortgage loan officer's working time is spent selling to customers, Joe Treinen testified that the MLOs' primary job duty was selling. Therefore, because the job duties of Defendant's MLOs differed significantly from the hypothetical job duties outlined in the 2006 Opinion Letter, a reasonable juror could conclude that Defendant did not act in conformity with the letter. *See Cole*, 824 F.2d at 928 (holding that an employer failed to prove it conformed to a DOL opinion letter where hypothetical facts contained in

the Letter are not "closely analogous to the situation of the employees"). Moreover, a reasonable trier of fact could determine that the duties of Defendant's MLOs did not qualify them as administratively exempt under the regulations.

Accordingly, Defendant is likewise unable to satisfy the second element of its affirmative defense at the summary judgment stage. In the final analysis, Defendant may be able to persuade a finder of fact that it actually relied upon and acted in conformity with the 2006 Opinion Letter and is thus entitled to a good faith affirmative defense, but Defendant has not met its burden at this stage of the litigation. Therefore, Defendant's motion for summary judgment on its Good Faith affirmative defense is **DENIED**.

### B. Enforceability of the 2010-1 AI

This Court recently held that the U.S. Department of Labor's Administrator Interpretation 2010-1 ("2010 AI") is an interpretive rule within the meaning of the Administrative Procedure Act ("APA"), 5 U.S.C. § 553(b)(A). Specifically, the APA's notice and comment procedures are not required for an interpretive rule such as the 2010 AI that modifies a prior interpretation of the same agency regulation, and the 2010 AI is not inconsistent with the regulation it interprets. *Lewis v. Huntington Nat'l Bank*, No. 2:11cv58, 2012 U.S. Dist. LEXIS 32166, at *52-56 (S.D. Ohio Mar. 12, 2012). Therefore, it was well-within WHD's discretion to issue Opinion Letters and Administrator's Interpretations of the FLSA Regulations.

-24-

Accordingly, this Court affirms its recent decision in *Lewis*, adopts the reasoning therein, and finds that Defendant's motion for partial summary judgment on the grounds that the 2010-1 AI was unlawfully promulgated is **DENIED**.

## V.     CONCLUSION

Accordingly, for the reasons stated herein, Defendant's motion for partial summary judgment (Doc. 32) is **DENIED**.

**IT IS SO ORDERED.**

Date:   5/7/12                                       *s/ Timothy S. Black*
                                                 Timothy S. Black
                                                 United States District Judge

-25-