## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

| | | |
|---|---|---|
| DUSTIN SWIGART and SONIA SCHULTZ, | : | |
| on behalf of themselves and all | : | Case No.: 1:11-cv-00088-TSB |
| other similarly situated employees, | : | |
| and on behalf of the proposed Ohio Rule | : | Judge Timothy S. Black |
| 23 Class, | : | |
| | : | |
| Plaintiffs, | : | PLAINTIFFS' MOTION AND |
| | : | MEMORANDUM OF LAW IN |
| | : | SUPPORT OF MOTION FOR RULE |
| | : | 23 CLASS CERTIFICATION |
| v. | : | |
| | : | |
| FIFTH THIRD BANK, | : | |
| | : | |
| Defendant. | : | |
| | : | |

Now come Plaintiffs Dustin Swigart and Sonia Schultz and respectfully move for class certification of their Ohio Minimum Fair Wage Standards Act claims, O.R.C. §§ 4111.03 and 4111.10, pursuant to Rule 23 of the Federal Rules of Civil Procedure.  Plaintiffs request that the Court certify the following class of employees:

> All persons who worked for Fifth Third Bank as a mortgage loan officer ("MLO") in the State of Ohio at any time between February 11, 2009 and January 3, 2011.

In support of this Motion, Plaintiffs submit their Memorandum of Law, which establishes that class certification is appropriate because Plaintiffs satisfy each of the Rule 23(a) elements (numerosity, commonality, typicality, and adequacy) and the predominance and superiority elements of Rule 23(b)(3).

Pursuant to Local Rule 7.3(b), Plaintiffs state that they have consulted with Defendant seeking consent to the instant motion.  Defendant refused to consent.

## TABLE OF CONTENTS

**INTRODUCTION**..................................................................................................................1

**PROCEDURAL HISTORY**..................................................................................................2

**STATEMENT OF FACTS**....................................................................................................4

**I. THE PARTIES**..................................................................................................................4

**II. MLOs PERFORM THE SAME PRIMARY JOB DUTY**................................................5

    **A. MLOs' Primary Job Duty was to Sell Defendant's Financial Products**..............5

    **B. Defendant's Sales Policies and Processes are "Non-Negotiable" for all MLOs**...6

    **C. Defendant Provides MLOs with the Same Sales Training**................................7

**III. DEFENDANT UNIFORMLY CLASSIFIED ALL MLOs AS EXEMPT AND LATER RECLASSIFIED THEM ALL TO NON-EXEMPT.**..................8

**ARGUMENT**.........................................................................................................................8

Plaintiffs satisfy each of the Rule 23(a) and (b)(3) requirements for class certification because all MLOs performed the same job duties, and Defendant admits that it did not pay its MLOs overtime wages and that it classified all MLOs as exempt according to the administrative exemption. Moreover, Defendant's argument that it is entitled to blanket immunity from any liability because of its purported good faith reliance on the 2006 Opinion Letter in making its classification decision is a defense that applies equally to all MLOs and is suitable for class wide determination.

**I. THERE IS NO INHERENT INCOMPATIBILITY BETWEEN RULE 23 CLASS ACTIONS AND FLSA COLLECTIVE ACTIONS**................10

Courts within this district routinely hold that Rule 23 class actions under state law may be brought together with FLSA collective actions. Wade v. Werner Trucking Co., 2011 WL 320233, at *2 (S.D. Ohio Jan. 28, 2011); Laichev v. JBM, Inc., 269 F.R.D. 633, 638 (S.D. Ohio 2008). The five appellate courts that have considered the issue have similarly ruled that the two mechanisms may be used in the same action. Lindsay v. Gov't Employees Ins. Co., 448 F.3d 416 (D.C. Cir. 2006); Shahriar v. Smith & Wollensky Rest. Group, Inc., 659 F.3d 234, 247-49 (2d Cir. 2011); Knepper v. Rite Aid Corp., 675 F.3d 249, 258-62 (3d Cir. 2012); Ervin v. OS Rest. Services, Inc., 632 F.3d 971 (7th Cir. 2011); Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761 (9th Cir. 2010).

**II. PLAINTIFFS SATISFY THE RULE 23(a) ELEMENTS** .................................................... 11

    **A. <u>Rule 23(a)(1): The Class is Sufficiently Numerous</u>** .................................................... 11

Plaintiffs satisfy the numerosity requirement because there are more than 350 putative class members, and joinder would be difficult and inconvenient.  <u>Laichev</u>, 269 F.R.D. at 639; <u>Day v. NLO, Inc.</u>, 144 F.R.D. 330, 333 (S.D. Ohio 1992).

    **B. <u>Rule 23(a)(2): Questions of Law and Fact are Common to All Members of the Proposed Class</u>** .................................................... 12

Plaintiffs satisfy the commonality requirement.  As an initial matter, the existence of one common issue is sufficient to satisfy commonality and factual differences among the putative class members cannot defeat commonality.  <u>Laichev</u>, 269 F.R.D. at 640.  In this case, the class has all suffered the same injury and makes a common contention: that Defendant uniformly classified all of its MLOs as exempt from the overtime provisions of state and federal law and therefore did not pay overtime wages when they worked more than forty hours in a workweek. That common contention, that MLOs were misclassified, is surely capable of class-wide resolution because Defendant's primary defense to this litigation is that it is entitled to blanket immunity from the claims of any and all MLOs based on its purported good faith defense, and, with respect to Defendant's administrative exemption defense, the parties are largely in agreement regarding the job duties performed by MLOs.  Trial will focus on Defendant's Section 259 defense, whether MLOs have a primary job duty of making sales, whether MLOs satisfy each of the administrative exemption requirements, and whether Defendant acted recklessly or without good faith.  Courts around the country routinely certify cases with similar trial issues.

    **C. <u>Rule 23(a)(3): The Claims of the Representative Plaintiffs are Typical of the Class</u>** .................................................... 16

Plaintiffs satisfy the typicality requirement because there is a sufficient relationship between the proposed class representatives' claims and that of the class such that the Court may attribute Defendant's unlawful conduct to the entire class.  <u>Sprague v. Gen. Motors Corp.</u>, 133 F.3d 388, 399 (6th Cir. 1998); <u>Laichev</u>, 269 F.R.D. at 640-41.  The proposed class representatives, who worked in Ohio as MLOs during the class period, unquestionably share the same factual and legal claims as the putative class members.

    **D. <u>Rule 23(a)(4): The Representative Plaintiffs and their Counsel are Adequate</u>** .... 17

Plaintiffs satisfy the adequacy requirement because the proposed class representatives share common interests with the putative class members and are vigorously pursuing their claims in this case.  <u>Laichev</u>, 269 F.R.D. at 641.  They have proven this by participating in the action, providing testimony when asked, and retaining counsel experienced in prosecuting class action cases.  Importantly, assertions that Defendant has "a plethora of typical defenses available against some, many and/or all of the class members and named Plaintiffs does not create a conflict of interest between Plaintiffs and the class members, nor make Plaintiffs inadequate representatives."  <u>Bentley v. Honeywell Int'l, Inc.</u>, 223 F.R.D. 471, 485 (S.D. Ohio 2004).

**III. PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(b)(3)** .................................18

    **A.  Common Questions Predominate over Individual Ones** .................................18

Plaintiffs satisfy the predominance requirement of Rule 23(b)(3) because class-wide questions are "at the heart of the litigation." Powers v. Hamilton County Public Defender Comm., 501 F.3d 592, 619 (6th Cir. 2007). Namely, whether Defendant acted in good faith reliance on, and in conformity with, the 2006 Opinion Letter, and if not, whether Defendant properly classified its MLOs as exempt administrative employees. Plaintiffs will show through common proof that Defendant is not entitled to the Good Faith defense, and that MLOs do not qualify for the administrative exemption.

    **B.  Class Action is Superior to Other Methods of Litigation** .................................19

Plaintiffs satisfy the superiority requirement of Rule 23(b)(3) because (1) there is no evidence that members of the class have any interest in individually controlling the prosecution of separate actions; (2) members of the class have not brought similar litigation; (3) it is desirable to concentrate the litigation in this forum, where the Court has already considered a dispositive motion and given that Defendant's headquarters, documents, and witnesses are located in the district; and (4) there is little or no difficulty in managing this class action. The focus of the superiority inquiry is really whether class certification will promote consistent results, thus giving the defendant "the benefit of finality and repose." Gunnells v. Healthplan Servs., Inc., 348 F.3d 417, 427 (4th Cir. 2003) Here, it would make no sense for MLOs in Ohio to sue Defendant separately and perhaps receive a different result from the Plaintiffs in this case as to Defendant's Good Faith defense or the administrative exemption. Rather, those issues should be decided in one forum, for the benefit of the parties and the judicial system.

    **C.  Proposed Notice** .................................20

**CONCLUSION** .................................20

## **TABLE OF AUTHORITIES**

**CASES**

Alba v. Papa John's USA, Inc., 2007 WL 953849 (C.D. Cal. Feb. 7, 2007) ...............................15

Alkire v. Irving, 330 F.3d 802 (6th Cir. 2003) ...........................................................................12

Amchem Products, Inc. v. Windsor, 521 U.S. 591 (197) ..........................................................9, 18

Aponte v. Comprehensive Health Mgmt., Inc., 2011 WL 2207586 (S.D.N.Y. June 2, 2011) .....15

Arnold v. DirectTV, Inc., 2011 WL 839636 (E.D. Mo. March 7, 2011).......................................10

Bacon v. Honda of America Mfg., Inc., 370 F.3d 565 (6th Cir. 2004) ........................................12

Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 105 F.R.D (S.D. Ohio 1985)..................11

Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471 (S.D. Ohio 2004) .....................................16, 17

Benway v. Res. Real Estate Servs., LLC, 239 F.R.D. 419 (D. Md. 2006) ..................................12

Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662 (D. Md. 2011) ...........................................10

Calderon v. GEICO Gen. Ins. Co., 279 F.R.D. 337 (D. Md. 2012)..................................11, 15, 20

Cross v. Nat'l Trust life Ins. Co., 553 F.2d (6th Cir. 1977) .......................................................17

Cuevas v. Citizens Fin Group, Inc., --- F.R.D. ----, 2012 WL 1865564

(E.D.N.Y. May 22, 2012) ..........................................................................................................15

Daffin v. Ford Motor Co., 458 F.3d 549 (6th Cir. 2006) ............................................................11

Damassia v. Duane Reade, Inc., 250 F.R.D. 152 (S.D.N.Y. 2008) ............................................15

Day v. NLO, Inc., 144 F.R.D. 330 (S.D. Ohio 1992)............................................................11, 12

Ervin v. OS Rest. Services, Inc., 632 F.3d 971 (7th Cir. 2011)...................................................10

Gomez v. Rossie Concrete, Inc., 270 F.R.D. 579 (S.D. Cal. 2010)..............................................10

Golden v. City of Columbus, 404 F.3d 950 (6th Cir. 2005) .......................................................11

Gunnells v. Healthplan Servs., Inc., 348 F.3d 417 (4th Cir. 2003) ............................................20

In re AEP ERISA Litig., 2008 WL 4210352 (S.D. Ohio Sept. 8, 2008) ......................................18

In re Am. Med. Sys., Inc., 75 F.3d 1069 (6th Cir. 1996)...........................................9, 11, 16, 17

Knepper v. Rite Aid Corp., 675 F.3d 249 (3d Cir. 2012) ............................................................10

Krzesniak v. Cendant Corp., 2007 WL 1795703 (N.D. Cal. June 20, 2007) ..............................15

Laichev v. JBM, Inc., 269 F.R.D. 633 (S.D. Ohio 2008) ...................................................... *passim*

Lee v. ABC Carpet & Home, 236 F.R.D. 193 (S.D.N.Y. 2006) ...................................................15

Lee v. Javitch, Block & Rathbone, LLP, 522 F. Supp. 2d 945 (S.D. Ohio 2007) ........................12

Lindsay v. Gov't Employees Ins. Co., 448 F.3d 416 (D.C. Cir. 2006) ..........................................10

Lyons v. Citizens Fin. Group, Inc., 2012 WL 4044870 (D. Mass. July 9, 2012) ..........................15

McLaughlin v. Liberty Mutual Ins. Co., 224 F.R.D. 304 (D. Mass. 2004) ...................................10

Meyers v. Crouse Health System, Inc., 274 F.R.D. 404 (N.D.N.Y. 2011)....................................10

Perkins v. Southern New England Tel. Co., 669 F. Supp. 2d 212 (D. Conn. 2009) ....................15

Peterson v. Cleveland Inst. of Art, 2011 WL 1297097 (N.D. Ohio Mar. 31, 2011).....................10

Pfaff v. Whole Foods Mkt. Group Inc., 2010 WL 3834240 (N.D. Ohio Sept. 29, 2010) .............18

Powers v. Hamilton County Public Defender Comm., 501 F.3d 592 (6th Cir. 2007)...................19

Recinos-Recinos v. Express Forestry Inc., 233 F.R.D. 472 (E.D. La. 2006) ...............................10

Ross v. RBS Citizens, N.A., 667 F.3d 900 (7th Cir. 2012) ..........................................................14

Scantland v. Jeffry Knight, Inc., 2010 WL 4117683 (M.D. Fla. Sept. 29, 2010)..........................10

Scott v. Aetna Servs., Inc., 210 F.R.D. 261 (D. Conn. 2002) .....................................................15

Scovil v. FedEx Ground Packaging Sys., Inc., 2012 WL 3308831 (D. Me. Aug. 13, 2012) .......15

Shahriar v. Smith & Wollensky Rest. Group, Inc., 659 F.3d 234 (2d Cir. 2011)..........................10

Shirk v. Fifth Third Bancorp, 71 Fed. R. Serv. 3d 1199,

2008 WL 4425535 (S.D. Ohio Sept. 30, 2008) ...............................................................11, 16, 17

Sibert v. TV Magic, Inc., 2010 WL 3589795 (C.D. Cal. Aug. 21, 2012) .....................................15

Sprague v. Gen. Motors Corp., 133 Fed 388 (6th Cir. 1998) ......................................................16

Sterling v. Velsicol Chem. Corp., 855 F.2d 188 (6th Cir. 1988)..................................................12

Thomas v. Matrix Corp. Servs., Inc., 2012 WL 3581298 (N.D. Ill. Aug. 17, 2012) ....................15

Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496 (6th Cir 2007) .....................................9

Wade v. Werner Trucking Co., 2011 WL 320233 (S.D. Ohio Jan. 28, 2011)................................10

Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541 (2011) .............................................................13

Wang v. Chinese Daily News, Inc., 231 F.R.D. 602 (C.D. Cal. 2005) .........................................15

<u>Wang v. Chinese Daily News, Inc.</u>, 623 F.3d 743 (9th Cir. 2010)................................................10

<u>Youngblood v. Family Dollar Stores, Inc.</u>, 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) ............15


## STATUTES

O.R.C. § 4111.03 ......................................................................................... i, 1

O.R.C. § 4111.10 ......................................................................................... i, 1

29 U.S.C. § 216(b) ......................................................................................2, 14

29 U.S.C. § 218(a) .........................................................................................1

29 U.S.C. § 255(a) ........................................................................................14

29 U.S.C. § 259 ............................................................................................2


## REGULATIONS AND RULES

Fed. R. Civ. P. 23 ................................................................................... *passim*

Fed. R. Civ. P. 56(d) ......................................................................................3


## OTHER AUTHORITIES

Herbert B. Newberg & Alba Conte, <u>Newberg on Class Actions</u> § 3.13 (3d ed. 1992) ...............16

2006 Opinion Letter, 2006 WL 2792445 (Sept. 8, 2006)...................................... *passim*

## <u>INTRODUCTION</u>

Congress designed the Fair Labor Standards Act to provide the minimum protection to American workers with respect to overtime and minimum wage compensation.  29 U.S.C. § 218(a).  The Act specifically states that it does not preclude, and thereby encourages, states to enact their own laws that provide additional or greater advantages to their workers.  <u>Id.</u>  Ohio is such a state.  In Ohio, workers who—for any number of reasons—choose not to participate in a Fair Labor Standards Act lawsuit by affirmatively filing a consent form with the Court can still benefit from the efforts of their coworkers who have stepped forward and are actively prosecuting their claims through the Rule 23 class action mechanism.  <u>See</u> O.R.C. §§ 4111.03, 4111.10; <u>Laichev v. JBM, Inc.</u>, 269 F.R.D. 633, 636 (S.D. Ohio 2008).

Defendant Fifth Third Bank employed a class of approximately 350 Mortgage Loan Officers ("MLOs") in Ohio between February 11, 2009 and January 3, 2011, including Named Plaintiffs and proposed Class Representatives Dustin Swigart and Sonia Schultz.  With this motion, Plaintiffs request that the Court certify a class of Defendant's MLOs who worked in the State of Ohio between February 11, 2009 and January 3, 2011.  Plaintiffs further request that the Court appoint Plaintiffs' Counsel, Nichols Kaster, PLLP as Class Counsel and Plaintiffs Swigart and Schultz as Class Representatives.

Plaintiffs satisfy each requirement of Rule 23.  Indeed, a class action makes perfect sense in a case like this where the putative class members all worked in the same position, in the same state, under the same compensation plan, subject to the same policies, were all classified as exempt for the same reason pursuant to the same statute, are subject to the same defenses, and all seek the same recovery: overtime wages.  For these reasons and those stated further below, Plaintiffs respectfully request that the Court grant this motion.

## PROCEDURAL HISTORY

Plaintiffs Dustin Swigart and Sonia Schultz both worked for Defendant as MLOs in Ohio during the proposed class period.  (See Docs. 31-2, 3; 126-14, 15.)  On February 11, 2011, Plaintiffs Swigart and Schultz filed this lawsuit against Defendant on behalf of themselves and all other similarly situated MLOs to recover overtime pay withheld by Defendant in violation of the Fair Labor Standards Act ("FLSA") and Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act").  (Doc. 1.)  In their Complaint, Plaintiffs Swigart and Schultz allege that Defendant misclassified them and all other MLOs as exempt and, as a result, are entitled to overtime pay for all weeks in which they worked more than forty hours.  (Id.)  Defendant filed its Answer denying their allegations on March 28, 2011.  (Doc. 20.)  In its Answer, Defendant averred that it properly classified all MLOs as exempt employees and made its classification decision in good faith reliance on publications issued by the United States Department of Labor ("DOL").   (Id.)

On June 24, 2011, Plaintiffs filed their motion for Conditional Certification and Judicial Notice, requesting that the Court conditionally certify the case as a collective action pursuant to the FLSA, 29 U.S.C. § 216(b), and authorize Plaintiffs to send notice to all MLOs employed by Defendant within three years of the date the motion was filed.  (Doc. 31.)  Defendant opposed Plaintiffs' motion not by disputing that Plaintiffs were similarly situated to the other MLOs, but by moving for Partial Summary Judgment on its Section 259 Good Faith defense.  (Docs. 32, 33.)  In its brief, Defendant argued that it uniformly classified all MLOs as administrative exempt employees in good faith reliance on the DOL's September 8, 2006 Opinion Letter (the "2006 Opinion Letter") and as a result was entitled to blanket immunity as to all MLOs from liability under the FLSA on all claims that accrued before March 2010 pursuant to 29 U.S.C. § 259.  (Id.)

Plaintiffs initially opposed the motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, arguing that the Court should deny Defendant's motion outright or, at a minimum, defer consideration until Plaintiffs had the opportunity to conduct discovery on Defendant's purported good faith.  (Doc. 38.)  The Court agreed, granting Plaintiffs' motion for conditional certification and judicial notice, deferring consideration of Defendant's motion for partial summary judgment, and ordering a limited discovery period.  (Docs. 39, 40.)  Consistent with the Court's Order granting conditional certification, Defendant produced a list of all MLOs it employed within three years of the Court's order, and Plaintiffs' counsel mailed and emailed the approved notice to them on September 19, 2011.  (Selander Decl. ¶ 3.)  Including the two named Plaintiffs, there are now 361 MLOs participating in the case as Plaintiffs.  (Id., ¶ 4.)

During the limited discovery period, Plaintiffs obtained documents from Defendant regarding its good faith defense and deposed three witnesses: (1) Mark Wilson, Defendant's 30(b)(6) corporate designee and sole witness identified in support its motion; (2) Stephanie Bauer Daniel, Defendant's in-house counsel who was intimately involved in Defendant's classification decision; and (3) Joseph Treinen, Defendant's former Vice-President of Retail Mortgage Lending and the management employee on whom Mark Wilson relied to determine the job duties of Defendant's MLOs.  (Selander Decl. ¶ 5.)  As explained in more detail below, this discovery revealed that Defendant consistently treated its MLOs as one cohesive group of employees, both in terms of their uniform classification first as exempt administrative employees and later as non-exempt employees, and in terms of their job duties, compensation, and expectations.

The limited discovery period closed on December 2, 2011, and the parties concluded briefing on Defendant's motion on March 2, 2012.  On May 7, 2012, the Court denied

Defendant's motion, holding that "genuine issues of material fact exist as to whether Defendant relied on and conformed to the 2006 Opinion Letter."  (Doc. 144 at 19.)

## STATEMENT OF FACTS

### I.    THE PARTIES

Defendant operates more than 1,300 full-service banking locations in twelve states.[1] Defendant's operations are divided into "affiliates" and "lines of business."  (Wilson Dep. 7-10.)[2]  There are four main lines of business: branch banking, commercial banking, consumer lending, and investment advisors.[3]  The term "affiliate" is used by Defendant to describe its management structure in each of the major cities in which it does business. (Wilson Dep. 9-10.) Defendant has five affiliates in Ohio: Toledo, Cleveland, Columbus, Dayton, and Cincinnati.[4] Defendant employed approximately 350 MLOs in Ohio between February 11, 2009 and January 3, 2011.  (Selander Decl. ¶ 6.)  Of those class members, 87 filed FLSA "opt-in" consent forms with the Court and are currently Plaintiffs in this case.  (Selander Decl. ¶ 7.)  Among those Plaintiffs are proposed class representatives Dustin Swigart and Sonia Schultz.  Plaintiff Swigart worked for Defendant as a MLO from May 2006 to July 2010.  (Ex. 2.)  Plaintiff Schultz worked for Defendant as a MLO from May 2006 to June 2010. (Ex. 3.)  Both worked for Defendant in its Cincinnati area banking locations.  (Exs. 2, 3.)

---

[1] https://www.53.com/site/about/regions-we-serve/index.html? (last visited on Sept. 20, 2012).

[2] All cited excerpts from the Rule 30(b)(6) Deposition of Mark Wilson were previously filed with the Court in connection with Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment, and can be found at Doc. 126-11.

[3] https://www.53.com/site/about/regions-we-serve/index.html? (last visited on Sept. 20, 2012).

[4] https://www.53.com/careers/lines_of_business.html (last visited on Sept. 20, 2012).

## II.     MLOs PERFORM THE SAME PRIMARY JOB DUTY

### A.  MLOs' Primary Job Duty was to Sell Defendant's Financial Products.

Defendant refers to MLOs as its "sales force." (Wilson Dep. 122:25-123:2.) It hires, promotes, ranks, terminates, and pays its MLOs based on their sales production. (Wilson Dep. 74:13- 77:18; Pls.' Decls.[5] ¶ 5-7.) Prior to the enactment of the Dodd-Frank Act in 2010, Defendant paid all MLOs based on the profitability of their loans, meaning that a MLO would receive more commission if she sold a loan to a borrower at an interest rate above the rate set by Defendant. (Wilson Dep. 120:6-121:7; Pls.' Decls. ¶ 12.) All MLOs report to an area sales manager. (Wilson Dep. 18-24.) Area sales managers, in turn, are responsible for managing and coaching MLOs on sales, sales processes, and how to improve sales results. (Id. 21:17-22:4.) Area sales managers also make sales calls with MLOs so that they can provide immediate feedback on sales presentations. (Id. 21:17-22:3.)

Defendant sets monthly sales goals for its MLOs which they are required to meet. (Id. 75:25-76:13; Pls.' Decls. ¶ 6-7.) If a MLO exceeds a particular threshold figure for sales, Defendant may assign them a sales assistant. (Wilson Dep. 78:4-15.) Defendant encourages competition among MLOs by ranking them nationally and regionally based on their sales. (Id. 78:16-23; Pls.' Decls. ¶ 7.) Defendant rewarded the highest ranked MLOs by naming them to a "President's Circle" and awarding them trips or annual bonuses. (Wilson Dep. 78:24-79:9; Pls.' Decls. ¶ 7.) Defendant holds "Sales Rallies" to reward successful MLOs and to train them on sales techniques. (2010 Sales Rally Agenda, Doc. 126-4.) The competency of a MLO is

---

[5] Declarations of Named Plaintiffs Dustin Swigart and Sonia Schultz, as well as Opt-In Plaintiffs Leah Carroll, David Fry, David Greer, Linda Hanba, Richard Kopystynsky, Glenn Lay, Jr., Tim Malpassi, Edward McClendon, Lee McLaughlin, Mark Mohr, Eloisa Rodriguez, Katherine Sidler, Michelle Stauffer, and Karen Varner were previously filed with the Court in connection with Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment, and can be found at Doc. 126-14 through 126-29.

indicated by the MLO's productivity, meaning the volume of the MLO's loan sales and ability to sell bank products. (Wilson Dep. 94:14-96:13.)

      **B.** **Defendant's Sales Policies and Processes are "Non-Negotiable" for all MLOs.**

Since 2005, Defendant has provided each of its MLOs with a "MLO Playbook." (Wilson Dep. 63:1-10; MLO Playbook, Doc. 126-5.) The MLO Playbook explains all of the things that a MLO needs to do in order to be successful. (Wilson Dep. 63:1-10; MLO Playbook, Doc. 126-5.) Throughout the MLO Playbook, Defendant uses the phrase "non-negotiable" to describe a policy that must be followed. (Id. 57:23-58:5; MLO Playbook, Doc. 126-5.) In plain terms, the phrase means "this is something that really is not for discussion. This is our process and how we are going to go about it." (Wilson Dep. 57:23-58:5.) One of Defendant's "non-negotiable" policies is the "One Bank" strategy, which is an addendum to the MLO Playbook. (Wilson Dep. 57:9-58:5; MLO Playbook, Doc. 126-5 at DEF000469.) The One Bank strategy "works to complement [Defendant's] existing Mortgage Sales Process" and includes a "One Bank Sales Process." (Id.) The non-negotiable One Bank Sales Process is as follows: (1) prepare and prospect (lead generation and lead conversion); (2) assess needs; (3) recommend solutions; (4) close the sale and implement solutions; and (5) follow through. (Wilson Dep. 58:6-59:5; MLO Playbook, Doc. 126-5 at DEF000470.) In the sale of mortgages, the One Bank Sales Process continues all the way from the initial meeting with the customer to the closing and beyond. (Wilson Dep. 72:12-15; MLO Playbook, Doc. 126-5 at DEF000470-474.) According to Defendant, MLOs view the entire process—from sales call, to obtaining a loan application, to the closing—as a "sale." (Wilson Dep. 73:24-74:12.)

At all times, Defendant required its MLOs to "cross-sell" additional bank products and services such as checking accounts and credit cards to every customer. (Wilson Dep. 53:6-23,

54:4-11; MLO Playbook, Doc. 126-5 at DEF000448, 466.) Cross-selling is another of Defendant's non-negotiable policies. (MLO Playbook, Doc. 126-5 at DEF000458.) Defendant compensated MLOs for their cross-sales through a referral program called "Team Fifth Third." (Wilson Dep. 53:24-54:11; MLO Playbook, Doc. 126-5 at DEF000467.) Under the Team Fifth Third referral program, Defendant paid MLOs additional compensation for each successful cross-sale. (Id.)

### C. **Defendant Provides MLOs with the Same Sales Training.**

Given Defendant's heavy emphasis on sales, it is not surprising that Defendant also trained its MLOs in sales techniques, and even hired outside vendors to provide mortgage sales training. In 2009, Defendant first partnered with a company called XINNIX to provide sales productivity training to its MLOs. (Wilson Dep. 80:24-81:4, 16-18.) The XINNIX training combined an eight-week internet training course with weekly conference calls and homework assignments. (Id. 81:19-24; Xinnix Sales Training Materials, Doc. 126-6.) The first four weeks of the course focused on the "Four Pillars of Success": (1) they know you (marketing); (2) they like you (relationship); (3) they trust you (follow-through); and (4) you make them money (deliver). (Xinnix Sales Training Materials, Doc. 126-6 at NKA0006249.) The course materials also instructed MLOs on how to overcome their own "sales call reluctance." (Id. at NKA0006306.) Part of the training on overcoming sales call reluctance included a live phone test. (Xinnix Call Reluctance Scale, Doc. 126-8.) Using a computer program, the MLO was judged on their ability to sell, and the results of the test were reviewed during the XINNIX course. (Xinnix Sales Training Materials, Doc. 126-6 at NKA0006316; Xinnix Call Reluctance Scale, Doc. 126-8.) The course materials also include scripts teaching MLOs how to overcome objections (Xinnix Sales Training Materials, Doc. 126-6 at NKA0006267-6268; Xinnix Sales

Call Scripts, Doc. 126-7 at NKA0005781), how to speak with receptionists (id. at

NKA0005786), how to ask someone out to lunch (id.), how to close a sale (id. at NKA0005794),

how to ask for referral business (id. at NKA0005799), and how to pitch sales to current borrower

clients (id. at NKA0005801).  In the event that a MLO did not know what to say in a voicemail

message, the MLO Playbook provided specific instructions.  (MLO Playbook, Doc. 126-5 at

NKA0002595.)

### III.    DEFENDANT UNIFORMLY CLASSIFIED ALL MLOs AS EXEMPT AND LATER RECLASSIFIED ALL MLOs TO NON-EXEMPT.

Until January 3, 2012, Defendant consistently and uniformly classified its MLOs as

exempt employees.  In 2006, Defendant conducted an audit of the MLO position.  (Wilson Dep.

89-94.)  In September 2006, Defendant concluded that all MLOs satisfied the elements of the

administrative exemption.  (Daniel Dep. 22-24.)[6]  Defendant also concluded that its MLOs did

not qualify for the outside sales exemption.  (Daniel Dep. 40, 41, 49.)  On January 3, 2012,

Defendant reclassified all MLOs to non-exempt, making them eligible for overtime pay.

(Wilson Decl., Doc. 32-6 ¶ 12-14.)

### ARGUMENT

Plaintiffs satisfy each requirement for class certification.  Defendant admits that it did not

pay Plaintiffs Swigart, Schultz, and the putative class of Ohio MLOs overtime wages.  It admits

that it classified all MLOs as exempt according to the administrative exemption.  Even if the

Court finds that Defendant misclassified its MLOs in violation of state and federal law, it argues

that it is entitled to blanket immunity from any liability because of its purported good faith

reliance on the 2006 Opinion Letter.  The factual and legal questions are: (1) the common

question of whether Defendant is entitled to the Section 259 Good Faith defense; (2) the

---

[6] Cited excerpts from the Deposition of Stephanie Bauer Daniel were previously filed with the Court in connection with Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment, and can be found at Doc. 126-13.

common question of whether Defendant's uniform corporate policy improperly classified Plaintiff and the putative class members as exempt under the FLSA and Ohio Wage Act, depriving them of overtime compensation; and (3) the amount of damages.  Because differences in damages do not preclude certification, the class should be certified, as liability can be determined on behalf of the entire class.

As a threshold matter, there is no inherent incompatibility when certifying a Rule 23 class action under state law while maintaining a collective action under the FLSA.  While Rule 23 class actions require plaintiffs to "opt-out" and the FLSA collective actions require plaintiffs to "opt-in," most courts have determined that the two actions may proceed together.  Furthermore, the legal standards applied to both claims are the same because the Ohio Wage Act "incorporates the standards and principles found in the FLSA."  Thomas v. Speedway SuperAmerica, LLC, 506 F.3d 496, 501 (6th Cir. 2007) (citing Ohio Rev. Code § 4111.03(A)).

A court may certify a class if the moving party satisfies the requirements set forth in Rule 23 of the Federal Rules of Civil Procedure.  In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996) (the moving party bears the burden of proof).  Rule 23(a) provides "[o]ne or more members of a class may sue . . . as representative parties on behalf of all members only if: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative party will fairly and adequately protect the class's interests."  Fed. R. Civ. P. 23(a).  These factors are referred to as numerosity, commonality, typicality, and adequacy of representation. Laichev v. JBM, Inc., 269 F.R.D. 633, 638 (S.D. Ohio 2008).  In addition to these factors, the moving party must satisfy one of the Rule 23(b) class requirements.  Amchem Products, Inc. v. Windsor, 521 U.S. 591, 614 (1997).  Here,

Plaintiffs satisfy the requirements of Rule 23(b)(3) because there are common questions of law or fact that predominate and the class action method is superior to other available methods for fairly and efficiently adjudicating these claims. Fed. R. Civ. P. 23(b)(3).

## I. THERE IS NO INHERENT INCOMPATIBILITY BETWEEN RULE 23 CLASS ACTIONS AND FLSA COLLECTIVE ACTIONS.

It is well settled that state law claims suitable for opt-out Rule 23 class action adjudication may coexist with FLSA opt-in collective actions. In fact, district courts in Sixth Circuit and throughout the country have held that such hybrid or combined actions are permissible.[7] Although the Sixth Circuit has not addressed this issue, the D.C., Second, Third, Seventh and Ninth Circuits have all recently held that the two claims can indeed coexist. Lindsay v. Gov't Employees Ins. Co., 448 F.3d 416 (D.C. Cir. 2006); Shahriar v. Smith & Wollensky Rest. Group, Inc., 659 F.3d 234, 247-49 (2d Cir. 2011); Knepper v. Rite Aid Corp., 675 F.3d 249, 258-62 (3d Cir. 2012); Ervin v. OS Rest. Services, Inc., 632 F.3d 971 (7th Cir. 2011); Wang v. Chinese Daily News, Inc., 623 F.3d 743, 761 (9th Cir. 2010) overruled on other grounds, 132 S. Ct. 74, 181 L. Ed. 2d 1 (U.S. 2011).

---

[7] See, e.g., Wade v. Werner Trucking Co., 2011 WL 320233, at *2 (S.D. Ohio Jan. 28, 2011) (Sargus, J.) ("[T]here is nothing inherently incompatible between an FLSA opt-in suit and an Ohio Act Rule 23 class action, and . . . they are able to coexist within the same litigation."); Laichev, 269 F.R.D. at 636 (Barrett, J.); Peterson v. Cleveland Inst. of Art, 2011 WL 1297097, at *3-5 (N.D. Ohio Mar. 31, 2011); Meyers v. Crouse Health System, Inc., 274 F.R.D. 404, 421 (N.D.N.Y. 2011) (noting "district courts in the Second Circuit routinely allow hybrid wage and hour suits with opt-in FLSA collective actions alongside opt-out Rule 23 class actions."); Butler v. DirectSat USA, LLC, 800 F. Supp. 2d 662 (D. Md. 2011); Arnold v. DirecTV, Inc., 2011 WL 839636, at *8 (E.D. Mo. March 7, 2011) ("The Court has no reason to believe at this time that both of the Plaintiffs' claims cannot be effectively adjudicated in this one action by proper case management."); Gomez v. Rossie Concrete, Inc., 270 F.R.D. 579, 587 (S.D. Cal. 2010) (Noting tension between the two types of actions, but ultimately concluding "consolidati[on of] the state claims with the federal claims would be much more efficient. . . . than litigating the same overtime issues in both state and federal court [as it would] save judicial and litigant resource to litigate them all here."); Scantland v. Jeffry Knight, Inc., 2010 WL 4117683 (M.D. Fla. Sept. 29, 2010) (denying Defendant's motion to dismiss Plaintiff's state law class claims for unpaid wages under various theories, including the Rules Enabling Act, implied preemption, supplemental jurisdiction, among others); Recinos-Recinos v. Express Forestry, Inc., 233 F.R.D. 472 (E.D. La. 2006) (conditionally certifying FLSA collective action and Rule 23 Louisiana state law class action); McLaughlin v. Liberty Mutual Ins. Co., 224 F.R.D. 304 (D. Mass. 2004) (certifying Rule 23 Massachusetts state law class action in suit in which FLSA collective action had already been conditionally certified).

Plaintiffs meet all the requirements of Rule 23 as set forth below, and the Court should not hesitate to certify a Rule 23 class notwithstanding claims of incompatibility.

## II. PLAINTIFFS SATISFY THE RULE 23(a) ELEMENTS

### A. Rule 23(a)(1): The Class is Sufficiently Numerous.

The first Rule 23(a) prerequisite requires the representative plaintiff to show that "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Generally referred to as the "numerosity" requirement, it is satisfied "only when joinder is impracticable." Laichev, 269 F.R.D. at 639 (citing In re Am. Med. Sys., Inc., 75 F.3d 1069, 1079 (6th Cir. 1996)). But, the plaintiff is *not* required to "establish that it is impossible to join all members of the proposed class." Day v. NLO, Inc., 144 F.R.D. 330, 333 (S.D. Ohio 1992). Rather, the plaintiff need only show that joinder of all members "would be difficult and inconvenient." Id. The rule does not set a "strict numerical test for determining if the number of a proposed class is substantial." Laichev, 269 F.R.D. at 639 (citing Golden v. City of Columbus, 404 F.3d 950, 966 (6th Cir. 2005); Daffin v. Ford Motor Co., 458 F.3d 549, 552 (6th Cir. 2006); Basile v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 105 F.R.D. 506 (S.D. Ohio 1985)). Typically, the plaintiff satisfies the numerosity requirement "where the class is made up of a large group of potential plaintiffs." Shirk v. Fifth Third Bancorp, 71 Fed. R. Serv. 3d 1199, 2008 WL 4425535, at *2 (S.D. Ohio Sept. 30, 2008). But smaller classes may also make joinder impracticable and thus satisfy numerosity. See, e.g., Basile, 105 F.R.D. 506 (holding that a proposed class of 23 individuals satisfied the numerosity requirement); Laichev, 269 F.R.D. at 639-40 (finding that a class of approximately 90 workers in hybrid FLSA/Rule 23 overtime pay case satisfied numerosity); Calderon v. GEICO Gen. Ins. Co., 279 F.R.D. 337, 346 (D. Md. 2012) (holding that a class of 77 workers in hybrid FLSA/Rule 23 overtime pay case satisfied

numerosity requirement). Indeed, the numerosity requirement "is not intended to be onerous." Lee v. Javitch, Block & Rathbone, LLP, 522 F. Supp. 2d 945, 957 (S.D. Ohio 2007).

Here, the proposed class consists of approximately 350 MLOs. Plaintiffs thus easily satisfy the numerosity requirement because joinder of that many suits would indisputably be difficult, inconvenient, and ultimately impracticable.

## B. Rule 23(a)(2): Questions of Law and Fact are Common to All Members of the Proposed Class.

The second Rule 23(a) prerequisite requires the proposed representative plaintiff to show that "there are questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2). Plaintiffs satisfy the "commonality" requirement "when 'it is unlikely that differences in the factual background of each claim will affect the outcome of the legal issue.'" Laichev, 269 F.R.D. at 640 (quoting Bacon v. Honda of America Mfg., Inc., 370 F.3d 565, 570 (6th Cir.2004)). The plaintiffs do not have to show that there are multiple legal or factual issues common to the class; rather, the existence of one common issue is sufficient. Id. (citing Alkire v. Irving, 330 F. 3d 802, 820 (6th Cir. 2003)). Commonality exists when "the members of the class have allegedly been affected by a general policy of the defendant, and the general policy is the focus of the litigation." Id. (quoting Day, 144 F.R.D. at 333). Like numerosity, establishing commonality is "not an onerous task." Lee, 522 F. Supp. 2d at 957. And, factual differences among the putative class members cannot defeat commonality. Id.; see also Laichev, 269 F.R.D. at 640 ("the mere fact that questions peculiar to each individual member of the class remain after the common questions of the defendant's liability have been resolved does not dicatate the conculsion that a class action is impermissible.") (quoting Sterling v. Velsicol Chem. Corp., 855 F.2d 188, 1197 (6th Cir. 1988)); Benway v. Res. Real Estate Srvs., LLC, 239 F.R.D. 419, 424 (D. Md. 2006)

(should "class members share the same legal theory, individual factual differences will not preclude certification. . . .").

Recently, the U.S. Supreme Court examined the commonality requirement of Rule 23 in Wal-Mart Stores, Inc. v. Dukes, a gender discrimination case.  131 S. Ct. 2541 (2011).  It described the commonality prong as requiring:

> the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law.  Their claims must depend upon a common contention—for example, the assertion of discriminatory bias on the part of the same supervisor. That common contention, moreover, must be of such a nature that it is capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke.

Id. at 2551 (internal citations and quotations omitted).  Here, the class has all suffered the same injury and makes a common contention: Defendant uniformly classified all of its MLOs as exempt from the overtime provisions of state and federal law and therefore did not pay overtime wages when they worked more than forty hours in a workweek.  The common contention, that MLOs were misclassified, is surely capable of class-wide resolution because Defendant's primary defense to this litigation is that it is entitled to blanket immunity from the claims of any and all MLOs based on its purported good faith defense.  Moreover, the undisputed facts in the summary judgment record show that Defendant classified all MLOs as administratively exempt, then uniformly and simultaneously reclassified them to non-exempt, and that they performed the same job duties, were subject to the same compensation plan based on their sales, received the same sales training, and were required to follow the same "non-negotiable" sales process as outlined in the MLO Playbook and One Bank Sales Process.  Put differently, the parties' disagreement in this case is not necessarily about what job duties the MLOs performed, but

rather whether their primary job duty was sales, as Plaintiffs contend, or something else, as Defendant contends.  At trial, both parties will submit evidence about the following topics:

(1) Whether Defendant acted in reliance on the  2006 Opinion Letter when classifying MLOs as exempt administrative employees;

(2) Whether Defendant acted in conformity with the 2006 Opinion Letter when classifying MLOs as exempt administrative employees;

(3) Whether Defendant's purported reliance on the 2006 Opinion Letter was in good faith;

(4) Whether MLOs have a primary job duty of selling Defendant's financial products;

(5) Whether MLOs, who are frontline production employees and whose job is strictly controlled by Defendant's non-negotiable guidelines, policies, and procedures, perform office or non-manual work directly related to Defendant's management or general business operations.

(6) Whether MLOs exercise discretion and independent judgment with respect to matters of significance.

(7) Whether Defendant's failure to pay overtime to its MLOs was willful (for purposes of determining whether a third year of damages is appropriate (29 U.S.C. § 255(a)).

(8) Whether Defendant's failure to pay overtime to its MLOs was in good faith (for purposes of determining whether liquidated damages should be awarded (29 U.S.C. § 216(b)).

Courts routinely certify misclassification cases with similar common questions, concluding that the central question—whether the employees were wrongfully classified as exempt from overtime pay—is common to the class.  See, e.g., Ross v. RBS Citizens, N.A., 667 F.3d 900 (7th

Cir. 2012) (affirming certification of assistant branch managers); Lyons v. Citizens Fin. Group, Inc., 2012 WL 4044870 (D. Mass. July 9, 2012) (same); Cuevas v. Citizens Fin. Group, Inc., ---F.R.D. ----, 2012 WL 1865564 (E.D.N.Y. May 22, 2012) (same); Calderon, 279 F.R.D. 337 (D. Md. 2012) (certifying class of security investigators)  Sibert v. TV Magic, Inc., 2012 WL 3589795 (C.D. Cal. Aug. 21, 2012) (common questions of law and fact as to whether plaintiffs were employees or independent contractors); Thomas v. Matrix Corp. Servs., Inc., 2012 WL 3581298 (N.D. Ill. Aug. 17, 2012) (same); Scovil v. FedEx Ground Package Sys., Inc., 2012 WL 3308831 (D. Me. Aug. 13, 2012) (same); Youngblood v. Family Dollar Stores, Inc., 2011 WL 4597555 (S.D.N.Y. Oct. 4, 2011) (certifying class of store managers); Aponte v. Comprehensive Health Mgmt., Inc., 2011 WL 2207586 (S.D.N.Y. June 2, 2011); Perkins v. Southern New England Tel. Co., 669 F. Supp. 2d 212, 225 (D. Conn. 2009) ("despite some dissimilarities, the potential class members performed similar non-exempt duties, and exercised similar amounts of discretion in their day-to-day work, and thus, faced a common policy of misclassification"); Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 156 (S.D.N.Y. 2008); Alba v. Papa John's USA, Inc., 2007 WL 953849, at *6 (C.D. Cal. Feb. 7, 2007) (finding commonality in case involving misclassification of store managers); Krzesniak v. Cendant Corp., 2007 WL 1795703, at *7 (N.D. Cal. June 20, 2007) (finding commonality in case involving misclassification of store managers); Lee v. ABC Carpet & Home, 236 F.R.D. 193, 203-04 (S.D.N.Y. 2006) (common questions of law and fact as to whether plaintiffs were employees or independent contractors); Wang v. Chinese Daily News, Inc., 231 F.R.D. 602, 607-08 (C.D. Cal. 2005); Scott v. Aetna Servs., Inc., 210 F.R.D. 261, 267 (D. Conn. 2002) (finding commonality because the class performed the same duties and was denied overtime pay).

15

**C. Rule 23(a)(3): The Claims of the Representative Plaintiffs are Typical of the Class.**

The third Rule 23(a) prerequisite requires the representative plaintiff to show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The typicality requirement has been described by the Sixth Circuit in the following manner: "as goes the claim of the named plaintiff, so go the claims of the class." Sprague v. Gen. Motors Corp., 133 F.3d 388, 399 (6th Cir. 1998). Thus, the purpose of the typicality inquiry is to "determine[] whether a sufficient relationship exists between the injury to the named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct." Id. (quoting In re American Med. Sys., 75 F.3d 1069, 1082 (6th Cir. 1996)). Where, as here, "it is alleged that the same unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented, the typicality requirement is usually met irrespective of varying fact patterns which underlie individual claims." Laichev, 269 F.R.D. at 640-41 (quoting 1 Herbert B. Newberg & Alba Conte, Newberg on Class Actions § 3.13 (3d ed.1992)); see also Shirk, 2008 WL 4425535, at *3 (typicality requirement satisfied when the proposed class representative's claims "arise from the same events, course of conduct, and legal theories as the claims of the class."). Similarly, differences in the amount of damages allegedly owed to each putative class member "is not fatal to a finding of typicality." Laichev, 269 F.R.D. at 641 (quoting Bentley v. Honeywell Int'l, Inc., 223 F.R.D. 471, 484 (S.D. Ohio 2004)). Here, the Plaintiffs' and class members' claims, as well as Defendant's Section 259 Good Faith and administrative exemption defenses, all arise from one course of conduct: Defendant's repeated and consistent decision to classify MLOs as exempt from state and federal overtime pay requirements. And there are two predominant legal questions in this case which affect all MLOs: whether Defendant can satisfy the three

16

requirements of the Section 259 Good Faith Defense, and whether the job duties performed by MLOs satisfy the requirements of the administrative exemption. Plaintiffs Swigart and Schultz, who worked in Ohio as MLOs during the class period, unquestionably share the same factual and legal claims as the putative class members. Plaintiffs easily satisfy the typicality requirement.

**D. Rule 23(a)(4): The Representative Plaintiffs and their Counsel are Adequate.**

The fourth and final Rule 23(a) prerequisite requires a showing that the proposed class representatives are adequate representatives of the class. Fed. R. Civ. P. 23(a)(4). Courts in the Sixth Circuit consider "two criteria for determining adequacy of a class representative: (1) the representative must share common interests with unnamed class members, and (2) it must be apparent that the class representative will vigorously represent those common interests through qualified counsel." Laichev, 269 F.R.D. at 641 (citing In re American Med. Sys., 75 F.3d at 1083)). The adequacy requirement "tests 'the experience and ability of counsel for plaintiffs and whether there is any antagonism between the interests of the plaintiffs and other members of the class they seek to represent.'" Shirk, 2008 WL 4425535, at *3 (quoting Cross v. Nat'l Trust Life Ins. Co., 553 F.2d 1026, 1031 (6th Cir. 1977)). Assertions that the defendant has "a plethora of typical defenses available against some, many and/or all of the class members and named Plaintiffs does not create a conflict of interest between Plaintiffs and the class members, nor make Plaintiffs inadequate representatives." Bentley, 223 F.R.D. at 485.

In this case, the proposed class representatives, Plaintiffs Swigart and Schultz, satisfy the adequacy prerequisite because they seek the same legal relief as the class (overtime pay, liquidated damages, attorneys' fees and costs) and have retained experienced counsel. Indeed, Defendant cannot deny that Plaintiffs' counsel Nichols Kaster, PLLP, has actively and vigorously pursued the claims of the Plaintiffs and putative class members in this case, by,

among other things, successfully moving for FLSA conditional certification, overseeing the notice process, engaging in discovery, and defeating Defendant's motion for partial summary judgment. Plaintiffs' counsel has also been class or collective counsel in numerous class and collective actions around the country. (Selander Decl., ¶ 8.) For these reasons, the Court should not hesitate to appoint Nichols Kaster as class counsel pursuant to Fed. R. Civ. P. Rule 23(g).

As for the proposed class representatives, "the named plaintiffs need not demonstrate extensive or sophisticated knowledge about the case, nor are they required to show their participation in the litigation at every step of the way." Pfaff v. Whole Foods Mkt. Group Inc., 2010 WL 3834240, at *5 (N.D. Ohio Sept. 29, 2010) (citing In re AEP ERISA Litig., 2008 WL 4210352, at *2 (S.D. Ohio Sept. 8, 2008)). But they must "demonstrate a basic understanding of the facts and legal claims comprising their case." Id. Here, Plaintiffs Swigart and Schultz have participated in the case by filing declarations in support of Plaintiffs' Motion for FLSA Conditional Certification and Judicial Notice and in support of Plaintiffs' Opposition to Defendant's Motion for Partial Summary Judgment. (See Docs. 31-2, 3; 126-14, 15.) These declarations confirm that Plaintiffs Swigart and Schultz are adequate class representatives.

## III. PLAINTIFFS MEET THE REQUIREMENTS OF RULE 23(b)(3)

### A. Common Questions Predominate over Individual Ones.

Rule 23(b)(3) requires "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). The issue is "whether the proposed classes are sufficiently cohesive to warrant adjudication by representation." Amchem Prods., 521 U.S. at 623. Put differently, the focus of the

predominance inquiry is whether class-wide questions are "at the heart of the litigation."  Powers v. Hamilton County Public Defender Comm., 501 F.3d 592, 619 (6th Cir. 2007).

Liability in this case turns on (1) whether Defendant acted in good faith reliance on, and in conformity with, the 2006 Opinion Letter, and (2) if not, whether Defendant properly classified its MLOs as exempt administrative employees.  With respect to the first issue, Plaintiffs will show through common proof that Defendant's purported reliance on the 2006 Opinion Letter was not objectively reasonable, that Defendant did not act in conformity with the 2006 Opinion Letter, and that Defendant did not act in good faith.  As for the second issue, Plaintiffs will show through common proof that MLOs have a primary duty of making sales, that they perform "production" work as opposed to office or non-manual work directly related to the running or servicing of Defendant's business, and that they do not exercise discretion and independent judgment with respect to matters of significance.

**B.  Class Action is Superior to Other Methods of Litigation**

Rule 23(b)(3) lists four factors for courts to consider when determining superiority of proceeding as a class action compared to other methods of adjudication: (1) the interests of the members of the class in individually controlling the prosecution of separate actions; (2) the extent and nature of other pending litigation about the controversy by members of the class; (3) the desirability of concentrating the litigation in a particular forum; and (4) the difficulties likely to be encountered in management of the class action. Fed. R. Civ. P. 23(b)(3).

There is no evidence that the putative class members have any interest in maintaining this litigation as a separate action.  And the benefits of concentrating the claims in this court through the class action mechanism are evident because there is no record of other similar litigation occurring in Ohio, and Defendant's headquarters, and many of its witnesses, are located in this

district.  <u>Calderon</u>, 279 F.R.D. at 347.  Finally, manageability should not be a concern given the limited size of the class (less than 400) and Defendant's agreement that discovery should proceed on a representative basis (Doc. 26 at 4).  In the end, the superiority question is really about whether class certification will promote consistent results, thus giving the defendant "the benefit of finality and repose."  <u>Gunnells v. Healthplan Servs., Inc.</u>, 348 F.3d 417, 427 (4th Cir. 2003) (stating that class certification protects defendants, as class actions are "binding on all class members," whereas "proceeding with individual claims makes the defendant vulnerable to the asymmetry of collateral estoppel. . . .").  The answer to that question in this case is a resounding "yes" because it would make no sense for MLOs in Ohio to sue Defendant separately and perhaps receive a different result from the Plaintiffs in this case as to Defendant's Good Faith defense or the administrative exemption.

## C.  **Proposed Notice**

Plaintiffs propose that the parties provide the Court with a joint proposed notice within ten days of the Court's order granting the instant motion.  In the event the parties are unable to agree on a proposed notice, Plaintiffs propose that the parties each present the Court with a proposed notice and a brief, not to exceed five pages, within fourteen days of the Court's order on the instant motion, and that the Court select one notice or the other.

## **CONCLUSION**

This Court previously found that Plaintiffs were sufficiently similarly situated to one another to warrant conditional FLSA certification.  Defendant contends that it is shielded from any liability from any MLO due to its Section 259 Good Faith defense.  Failing that defense, Defendant relies class-wide upon the equally singular administrative exemption defense when the summary judgment record presents undisputed facts regarding the job duties performed by all

MLOs.  While there is no doubt that the Rule 23 class certification standard is more stringent

than the standard for conditional certification under the FLSA, Plaintiffs have satisfied the Rule

23 criteria by providing sufficient evidence that liability and damages can be decided on a class-

wide basis.  But more importantly, Defendant itself admits the same, at least with respect to its

Good Faith defense.  For these reasons, Plaintiffs respectfully request that the Court grant their

motion, certify a class of Ohio MLOs, and appoint Plaintiffs' Counsel as Class Counsel and

Named Plaintiffs Dustin Swigart and Sonia Schultz as Class Representatives.

Respectfully submitted this 27th day of September, 2012.

**NICHOLS KASTER, PLLP**

/s/ Timothy C. Selander____
Paul J. Lukas, MN Bar No. 22084X*
Matthew H. Morgan, MN Bar No. 304657*
Timothy C. Selander, MN Bar No. 0387016*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN  55402
T: (612) 256-3200
F: (612) 338-4878
E: lukas@nka.com
    morgan@nka.com
    selander@nka.com

*admitted pro hac vice*

**FREKING & BETZ, LLC**

Sheila M. Smith, OH Bar No. 0065115
525 Vine Street, 6th Floor
Cincinnati, OH 45202
T: (513) 721-1975
F: (513) 651-2570
E: ssmith@frekingandbetz.com

ATTORNEYS FOR PLAINTIFFS

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 27, 2012, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

Matthew H. Morgan (morgan@nka.com, assistant@nka.com);

Randolph Harry Freking  (randy@frekingandbetz.com, docket@frekingandbetz.com, susan@frekingandbetz.com);

Scott A. Carroll (scott.carroll@jacksonlewis.com, CincinnatiDocketing@jacksonlewis.com, dibenedp@jacksonlewis.com);

Sheila M. Smith (ssmith@frekingandbetz.com, docket@frekingandbetz.com, khuber@frekingandbetz.com);

Tim C. Selander (selander@nka.com, assistant@nka.com);

Anthony J. Hall (ajhall@littler.com, ssarber@littler.com, evega@littler.com, eluzunaris@littler.com, vking@littler.com, kmack@littler.com);

Desiree C. Henderson (dhenderson@littler.com, eluzunaris@littler.com, evega@littler.com, kmack@littler.com, ssarber@littler.com, vking@littler.com),

Paul J. Lukas (lukas@nka.com, assistant@nka.com); and

Nitin Shah (nitin.shah@usdoj.gov).

I further certify that I caused the proposed order to be filed with the court via the ECF system to Judge Timothy S. Black (black_chambers@ohsd.uscourts.gov).

And I certify that I caused a copy of the proposed order to be e-mailed to the following:

Matthew H. Morgan (morgan@nka.com);
Randolph Harry Freking (randy@frekingandbetz.com);
Scott A. Carroll (scott.carrol@jacksonlewis.com);
Sheila M. Smith (ssmith@frekingandbetz.com);
Anthony J. Hall (ajhall@littler.com); and
Desiree C. Henderson (dhenderson@littler.com).

| | |
|---|---|
| Dated:  September 27, 2012 | NICHOLS KASTER, PLLP |
| | /s/ Timothy C. Selander |
| | Timothy C. Selander, MN Bar No. 0387016* |
| | 4600 IDS Center, 80 South 8th Street |

Minneapolis, MN  55402
T: (612) 256-3200
F: (612) 338-4878
E: selander@nka.com
*admitted pro hac vice*

ATTORNEY FOR PLAINTIFFS