**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

| | | |
|---|---|---|
| DUSTIN SWIGART and SONIA SCHULTZ, | : | |
| on behalf of themselves and all other similarly | : | Case No.: 1:11-cv-00088-TSB |
| situated employees, and on behalf of the Ohio | : | |
| Rule 23 Class, | : | Judge Timothy S. Black |
| | : | |
| Plaintiffs, | : | |
| | : | |
| v. | : | |
| | : | |
| FIFTH THIRD BANK, | : | |
| | : | |
| Defendant. | : | |
| | : | |

**PLAINTIFFS' UNOPPOSED MOTION AND**
**MEMORANDUM OF LAW FOR APPROVAL OF**
**ATTORNEYS' FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS**

## TABLE OF CONTENTS

INTRODUCTION...............................................................................................1

    I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY.......................2

    II.  ARGUMENT.........................................................................................7

    I.    **Class Counsel's Attorneys' Fees Are Reasonable**.............................7

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007).

      A. **The Court Should Adopt the Percentage Approach to Award Attorneys' Fees**.................................................................................8

In this district, "the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011). Here, Plaintiffs request that the Court adopt the percentage approach to award Class Counsel's attorneys' fees in the amount of 33% of the Settlement Fund, or $1,320,000.00.

      B. **The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees**.................................................................................8

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* Factors. Each of the six factors weighs in favor of awarding the requested attorneys' fees.

        1.  **The Settlement Provides a Substantial Benefit to the Class**.................................................................................9

Class Counsel's work resulted in a settlement of $4,000,000. Further, the settlement provides relatively early relief to Class Members, and eliminates the additional risks the parties would otherwise bear if this litigation were to continue. Absent settlement, the parties would have engaged in extensive discovery (including written discovery and multiple depositions), and contested class certification, FLSA collective decertification, and dispositive motions on merits and damages issues.

        2.  **Society's Stake in Rewarding Attorneys who Produce the Benefits to the Class in Order to Maintain an Incentive to Others**...........10

Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *4

(S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage and hour cases, as these are frequently complex matters.")

### 3. Class Counsel Undertook Considerable Risk of Nonpayment in Litigating this Case on a Contingency Basis………………………...11

Despite the risks associated with prosecuting this case, including issues related to certification, Defendant's multiple defenses, the extent to which MLOs actually worked overtime hours, and willfulness, Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Further, Class Counsel have not been compensated for any time or expense since the litigation began, consistent with the fee agreement entered into between Plaintiffs and Class Counsel.  This factor thus weighs in favor of awarding the requested fee.  See Gentrup, 2011 WL 2532922, at *4 (finding that plaintiffs' counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee).

### 4. The Lodestar Cross Check Supports Approval of the Requested Fees ...……………………………………………….………………13

Although performing a cross-check on the percentage method using Class Counsel's lodestar is optional, Class Counsel's request for attorneys' fees is also reasonable under that analysis.  Based on their extensive experience litigating collective and class actions, Class Counsel were able to litigate and settle the claims more efficiently than counsel with less experience.  Class Counsel's cumulative lodestar of $512,885 compared to its requested fee of $1,320,000 yields a lodestar multiplier of 2.57, which is consistent with other risk multipliers approved in complex class actions in this Circuit.  See, e.g., Lowther, 2012 WL 6676131, at *5-6 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier).)

### 5. The Complexity of this Litigation Weighs in Favor of the Requested Award……………………………...………………………..15

Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming.  See Beckman v. KeyBank, N.A., 293 F.R.D. 467, 479-480 (S.D.N.Y. 2013).  This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA, and the state laws of Ohio.  Resolving the merits, damages, and procedural issues would have been risky, costly, and time consuming.  Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### 6. Class Counsel's Skills Support Approval……………………….…16

The professional skill and standing of counsel on both sides is substantial.  As discussed in the Declaration of Rachhana T. Srey, all Class Counsel are qualified, experienced, and have substantial credentials in federal courts, class and collective action litigation.  The lawyers representing Defendant have extensive experience in this area.  Accordingly, this factor supports approval of the requested fee award.

**7. The Requested Fee Award is Comparable to Fee Awards in Similar Cases**……………………………………………...................16

An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts. See, e.g., Johnson, 2013 WL 2295880, at * 6 (awarding attorney fees and expenses to Class Counsel in an amount of 33% of the settlement funds in class action case); Kritzer v. Safelite Solutions, LLC, 2012 WL 1945144 (S.D. Ohio May 30, 2012) (hybrid FLSA collective and Ohio class action for unpaid overtime awarding attorney's fees and costs up to $235,000 in a settlement of $455,000 (52% of total recovery).

**II. CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES SHOULD BE APPROVED**…………………………………………...17

Collectively, Class Counsel seeks $39,406.46 in out-of-pocket litigation expenses. All of these costs were reasonable and necessary in connection with litigating and resolving this case and are reimbursable. See In re Packaged Ice Antitrust Litig., 2012 WL 5493613, at *8 (E.D. Mich. Nov. 13, 2012) (approving costs to plaintiff's counsel related to travel, telephone, printing, postage, federal express, westlaw and IT services.)

**III. THE PROPOSED CLASS REPRESENTATIVE AWARDS ARE REASONABLE**…………………………………………………………………..18

The modest class representative award requests have been tailored to compensate each Class Representative in proportion to his or her time and effort in prosecuting the claims asserted in this action, and should be awarded.

**CONCLUSION**………………………………………...………….………………………20

## <u>TABLE OF AUTHORITIES</u>

**<u>Cases</u>**                                                                    **<u>Page(s)</u>**

*Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764 (S.D. Ohio Feb. 28, 2008)……………………………………………………………………………………………16

*Beckman v. KeyBank, N.A.*, 293 F.R.D. 467 (S.D.N.Y. 2013)…………………….....................17

*Bowling v. Pfizer, Inc.*, 102 F. 3d 777 (6th Cir. 1996)…………………………...………....……10

*Brotherton v. Cleveland*, 141 F. Supp. 2d 907 (S.D. Ohio 2001)………………………………..19

*Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008 (S.D. Ohio Jan. 26, 2011)……………………………………………………………………………………………....10

*Cougill v. Prospect Mortg., LLC*, 2014 WL 130940 (E.D. Va. Jan. 14, 2014)……………..…….13

*Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933 (N.D. Ohio Mar. 8, 2010)……………………………………………………………………………………....19, 23

*Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240 (S.D. Ohio 1991)………..18

*Foster v. Nationwide Mut. Ins. Co.*, 710 F. 3d 640 (6th Cir. 2013)……………………….………12

*Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922 (S.D. Ohio, June 24, 2011)……………………………………………………………………………....…..12, 15, 17

*Gonter v. Hunt Valve Co., Inc.*, 510 F. 3d 610 (6th Cir. 2007)……………………………………12

*Hainey v. Parrott*, 617 F. Supp. 2d 668 (S.D. Ohio 2007)……………………...……….……...21

*Hantz v. Prospect Mortg., LLC*, 2014 WL 463019 (E.D. Va. Feb. 5, 2014)……………..……....13

*Heibel v. U.S. Bank Nat'l Assoc.*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014)……………………………………………………………………………15, 16, 18, 21, 23

*Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012)……………………..……....11, 13

*In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061 (E.D. Mo. 2002)…………………..21

*In re Cardinal Health Inc., Sec. Litig.*, 528 F. Supp. 2d 752 (S.D. Ohio 2007)…………10, 15, 16

*In re Datatec Systems*, 2007 WL 4225828 (D.N.J. Nov. 28, 2007)……………………………..20

*In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947 (S.D. Ohio 2004)………………………….…10

*In re S. Ohio Corr. Facility*, 173 F.R.D. 205 (S.D. Ohio 1997)……………...………………19

*In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2012 WL 5493613 (E.D. Mich. Nov. 13, 2012)……………………………………………………………………...…21

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F. 3d 283 (3d Cir. 1998)………………………………………………………………………..16

*In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491 (W.D. Pa. 2003)………………….……..20

*In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72 (D.N.J. 2001)……………..…….20

*In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, (S.D. Ohio 2001)……………………19

*Johnson v. Midwest Logistics Sys., Ltd.*, 2013 WL 2295880 (S.D. Ohio May 24, 2013)……………………………………………………………………..19, 21, 22

*Kritzer v. Safelite Solutions, LLC*, 2012 WL 1945144 (S.D. Ohio, May 30, 2012)………...……12

*Lewis v. Huntington Nat'l Bank*, 838 F. Supp. 2d 703 (S.D. Ohio 2012)..................................…13

*Lowther v. AK Steel Corp.*, 2012 WL 6676131 (S.D. Ohio, Dec. 21, 2012)…...……..9, 15, 16, 18

*McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730 (6th Cir. 2002)……………………………15

Mortgage Bankers Ass'n v. Harris, 720 F. 3d 966 (D.C. Cir. 2013)……………………………13

*Ramey v. Cincinnati Enquirer, Inc.*, 508 F.2d 1188 (6th Cir. 1974)……...………………10, 11

*Rotuna v. W. Customer Mgmt. Grp., LLC*, 2010 WL 2490989 (N.D. Ohio June 15, 2010)……………………………………………………………………..19

*Smillie v. Park Chem. Co.*, 710 F. 2d 271 (6th Cir. 1983)……………………………..……..18

*Struck v. PNC Bank N.A.*, No. 2:11-cv-00982-ALM-NMK (S.D. Ohio May 16, 2014)…………………………………………………………....16, 18, 21, 23

## **INTRODUCTION**

This is a collective and class action lawsuit for unpaid overtime wages brought by Plaintiffs Dustin Swigart and Sonia Schultz ("Named Plaintiffs" or "Class Representatives"), on behalf of themselves and other similarly situated Mortgage Loan Originators ("MLOs") employed by Defendant Fifth Third Bank ("Defendant") to recover overtime pay that they alleged Defendant withheld in violation of the Fair Labor Standards Act ("FLSA") and Ohio Minimum Fair Wage Standards Act ("Ohio Wage Act").  In May 2013, the parties reached a proposed settlement of $4,000,000, which the Court preliminarily approved on February 19, 2014.  (Doc. 176.)  As detailed in Plaintiffs' Unopposed Motion for Preliminary Settlement Approval (Doc. 175) and Plaintiffs' Unopposed Motion for Final Settlement Approval (filed concurrently with this motion), the proposed settlement represents a substantial recovery for the participating Plaintiffs and class members and was overwhelmingly well-received.

Class Counsel's prosecution of this case included a thorough investigation of the Plaintiffs' and class members' claims and Defendant's defenses, and an efficient use of resources.  They interviewed more than three hundred opt-in Plaintiffs, reviewed extensive documents and data regarding job duties and potential damages, successfully certified the FLSA collective action and issued the Court-approved notice to the putative collective class, deposed necessary witnesses, defeated Defendant's motion for summary judgment, successfully certified and issued notice to the Ohio Rule 23 class, negotiated the substantial settlement pending before the Court, and spent months analyzing Defendant's payroll and employment data to ensure that the settlement was allocated in the fairest and most consistent way possible.  And, in the event that the Court approves the settlement, Class Counsel will continue to represent the Plaintiffs and class members for months to ensure that they receive their settlement checks, cash them within

1

the specified time period, and receive the appropriate tax documents for filing during the 2015 tax season.

As compensation for their work and the results obtained in this case, and pursuant to Rules 23(h) and 54(d)(2), Plaintiffs respectfully request the Court award Class Counsel attorneys' fees in the amount of 33% of the total settlement amount, or $1,320,000, and reimbursement of necessary and appropriate out-of-pocket litigation expenses in the amount of $39,406.46. As explained in more detail below, the requested award is consistent with the parties' Settlement Agreement, the fee agreement between Plaintiffs and Class Counsel, and orders from courts within this District and Circuit. The award fairly and reasonably compensates Class Counsel for their efforts to efficiently investigate and prosecute the Plaintiffs' and class members' claims, taking into account the quality, nature, and extent of Class Counsel's efforts in this complex case, the results achieved, the risk of non-payment, and the benefits to the Plaintiffs, class members, and judicial system for achieving the result through settlement. In addition, Plaintiffs request that the Court approve the parties' agreement to grant the two Named Plaintiffs class representative awards in the amount of $10,000 each.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In their February 8, 2011 Complaint, the Named Plaintiffs alleged that Defendant violated the FLSA and Ohio Wage Act by failing to pay MLOs overtime wages. (Doc. 1.) Defendant filed its Answer on March 28, 2011, averring that it properly classified Plaintiffs and all MLOs as exempt employees under a number of different exemptions, including the administrative and outside sales exemptions. (Doc. 31.) Defendant also pled a good faith defense pursuant to 29 U.S.C. § 259, claiming it was entitled to blanket immunity from liability on the grounds that "actions taken in connection with Plaintiffs' compensation and the

compensation of "similarly situated individuals" were done in good faith in conformity with and reliance upon written administrative regulations, orders, rulings, approvals, interpretations, and written and unwritten administrative practices or enforcement policies of the Administrator of the Wage and Hour Division of the United States Department of Labor." (*Id.*)

On June 24, 2011, Plaintiffs moved for conditional certification and judicial notice pursuant to the FLSA, 29 U.S.C. § 216(b). (Doc. 31.) In opposition, Defendant moved for partial summary judgment on its Section 259 good faith defense. (Docs. 32, 33.) In its brief, Defendant argued that when it classified the MLOs as exempt, it relied in good faith on a series of relevant regulatory pronouncements of the DOL, including 2004 revisions to the "white-collar" exemption regulations ("2004 regulations"), and an Opinion Letter issued by the DOL on September 8, 2006 ("the 2006 Opinion Letter"), as well as the advice of counsel regarding its evaluation of the MLO position and interpretation of the relevant DOL regulations. Defendant further argued that as a legal consequence of its good-faith reliance on the DOL's regulatory pronouncements and the advice of outside counsel, Plaintiffs could not recover for any claim to overtime compensation under the FLSA after September 8, 2006 pursuant to 29 U.S.C. § 259. (*Id.*)

Given that the case was in its infancy, Plaintiffs initially opposed Defendant's summary judgment motion pursuant to Rule 56(d) of the Federal Rules of Civil Procedure, arguing that the Court should defer consideration until Plaintiffs had the opportunity to conduct discovery on Defendant's good faith defense. (Doc. 38.) The Court agreed, granting Plaintiffs' motion for conditional certification and judicial notice, deferring consideration of Defendant's motion for partial summary judgment, and ordering a limited discovery period. (Docs. 39, 40.) Consistent with the Court's Order granting conditional certification, Defendant produced a list of all MLOs

3

it employed within three years of the Court's order, and Plaintiffs' counsel mailed and emailed the approved notice to them on September 19, 2011. (Declaration of Rachhana T. Srey ("Srey Decl.") ¶ 3.) Including the two named Plaintiffs, 366 individuals returned signed consent forms, which Plaintiffs' Counsel filed with the Court. (*Id.*)[1]

During the limited discovery period, Plaintiffs obtained documents from Defendant regarding its good faith defense and deposed three witnesses: (1) Mark Wilson, Defendant's 30(b)(6) corporate designee regarding the good faith defense; (2) Stephanie Bauer Daniel, Defendant's in-house counsel; and (3) Joseph Treinen, Defendant's former Vice-President of Retail Mortgage Lending. (*Id.* ¶ 4.) The limited discovery period closed on December 2, 2011, and the parties concluded briefing on Defendant's summary judgment motion on March 2, 2012. On May 7, 2012, the Court denied Defendant's motion, holding that "genuine issues of material fact exist as to whether Defendant relied on and conformed to the 2006 Opinion Letter." (Doc. 144, PageID 2058.)

After the Court denied Defendant's summary judgment motion, the parties attempted to negotiate a settlement in an August 27, 2012 mediation session with Mediator John Van Winkle. (Srey Decl. ¶ 5.) Although the parties spent several weeks preparing for the mediation, it was ultimately unsuccessful. (*Id.*) Following the failed mediation, Plaintiffs moved for Rule 23 certification of their Ohio Wage Act claims. (Doc. 148.) On December 28, 2012, the Court granted the motion, certifying a class of MLOs who worked for Defendant in Ohio at any time between February 11, 2009 and January 3, 2011 and were classified as exempt. (Doc. 159.)

---

[1] Only 327 of these individuals were eligible to participate in the settlement: five were ineligible because they withdrew their consent to join forms prior to settlement (*see* Docs. 29, 94, 115, 116, 120); thirty-four were ineligible because they either never worked in the MLO position or did not join the case within the three-year FLSA statute of limitations (*see* Preliminary Approval Order, Doc. 176).

After the Court approved the parties' proposed Class Notice (Doc. 165), Plaintiffs mailed notice to the class members, apprising them of the lawsuit, the Court's certification Order, and affording them the opportunity to opt-out. (Srey Decl. ¶ 6.) Nine MLOs returned opt-out forms, excluding themselves from the class. (*Id.*)

After the Court issued its Order granting class certification, the parties engaged in additional discovery, motion practice and negotiations regarding the remaining deadlines in the case, including the trial date, and amount and type of discovery that each party would be permitted to take prior to trial. (*See* Docs. 160, 162, 164 and Minute Entry dated Jan. 25, 2013.) Ultimately, the parties agreed to and filed a Joint Stipulation Regarding Representative Discovery and Testimony (Doc. 166), which the Court entered on March 6, 2013 (Doc. 168). The parties spent the several more weeks reviewing and producing documents, answering interrogatories, taking, scheduling and preparing for depositions, and identifying representative MLOs. (Srey Decl. ¶ 7.)

After reaching an agreement to attend a second mediation session, the parties filed a motion on March 18, 2013, asking the Court to extend the case deadlines by eight weeks and to reset the trial date. (Doc. 169.) The Court granted the parties' motion on March 20, 2013. (Notation Order dated Mar. 20, 2013.) On May 15, 2013, the parties, through their respective counsel, met in Cincinnati, Ohio with Mediator John Van Winkle. (Srey Decl. ¶ 8.) In preparation for this second mediation session, Defendant produced additional discovery related to the class members' dates of employment and earnings, which Class Counsel extensively analyzed in order to calculate potential damages. (*Id.*) Class Counsel also prepared an exhaustive mediation letter describing the facts, legal arguments that Plaintiffs would make if mediation were unsuccessful, Class Counsel's views of the risk associated with continued

litigation, and Plaintiffs' potential damages. (*Id.*) After a full day of negotiations, the parties signed a term sheet. (*Id.*)

In the weeks following the mediation, the parties negotiated the terms of the Settlement Agreement currently pending final approval. (Srey Decl. ¶ 9; Settlement Agreement, Doc. 175-2.) In addition, Defendant produced additional data which Class Counsel organized and formulated to appropriately calculate settlement allocations. (Srey Decl. ¶ 9.) Despite the parties' best efforts, this process was far more difficult and time-consuming than either party initially expected. (*Id.*) In the ten months between the mediation and the date Plaintiffs filed their Preliminary Approval Motion, the parties, including the two Class Representatives, analyzed the data related to the settlement, including eligible MLOs' dates of employment, job title history, and earnings during the relevant time periods, and calculated appropriate and reasonable allocations. (*Id.*) Specifically, the parties spent a great deal of time reviewing the claims and employment data for approximately thirty Plaintiffs and class members who had worked for Defendant in related, but ultimately ineligible positions (*e.g.*, wholesale account executive, area sales manager), or who had moved into and out of the MLO position during the statutory period and were thus eligible for certain periods of time, but not others. (*Id.*) The delay resulting from the parties' attempts to resolve these ineligibility issues was exacerbated by the parties' agreement to allocate the settlement funds using a formula that took into account each eligible individual's dates of employment in the MLO position and their earnings during those weeks. (*Id.*) Ultimately, the parties are confident that the settlement funds were allocated correctly. (*Id.*)

The parties concluded their work on the settlement allocations on February 4, 2014 and Plaintiffs filed their Motion for Preliminary Approval the following day. (Doc. 175.) The Court granted the Motion on February 19, 2014. (Doc. 176.)

The Claims Administrator mailed the settlement notice to the 520 Plaintiffs and class members on March 12, 2014. (Declaration of Settlement Administrator Ricky Borges ("Borges Decl.") ¶ 10 (submitted concurrently in support of Plaintiffs' Unopposed Motion for Final Settlement Approval).) Throughout the 45-day notice period, Class Counsel responded to over 100 calls and emails from Plaintiffs and class members regarding the settlement. (Srey Decl. ¶ 10.) As the April 26, 2014 notice deadline approached, Class Counsel also made additional efforts to affirmatively contact dozens of Plaintiffs and class members to ensure they received the settlement notice, remind them of the deadline, answer their questions, and provide them with additional copies of the claim form. (*Id.*) Due at least in part to these efforts, the response to the settlement was extremely positive, with 478 class members accepting the settlement terms by timely returning a claim form. (Borges Decl. ¶ 13.) The 478 participating Plaintiffs and class members includes the two Named Plaintiffs, 99% of the eligible Opt-In Plaintiffs, and 79% of the eligible class members. (Srey Decl. ¶ 10.) Importantly, no Plaintiff rejected the settlement, and no class member opted-out or objected. (Borges Decl. ¶ 10-11.)

## ARGUMENT

## I.   CLASS COUNSEL'S ATTORNEYS' FEES ARE REASONABLE

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012). When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis. *See In re Cardinal*

*Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007). First, the district court determines the method for calculating the attorneys' fees: either the percentage of the fund approach or the lodestar approach. *Id.* (citing *In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 949-51 (S.D. Ohio 2004)). Second, the district court must analyze and weigh the six factors described by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F. 2d 1188 (6th Cir. 1974). *Id.*

### A.   The Court Should Adopt the Percentage Approach to Award Attorneys' Fees

In the Sixth Circuit, district courts have the discretion "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the actual cases pending before the Court" using either the percentage or lodestar approach. *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996)). In this district, "the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier." *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011). Here, Plaintiffs request that the Court adopt the percentage approach to award Class Counsel's attorneys' fees in the amount of 33% of the Settlement Fund, or $1,320,000.

### B.   The *Ramey* Factors Weigh in Favor of Awarding the Requested Fees

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors:

> (1) the value of the benefits rendered to the class;
> (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
> (3) whether the services were undertaken on a contingent fee basis;
> (4) the value of the services on an hourly basis [the lodestar cross-check];
> (5) the complexity of the litigation; and

8

(6) the professional skill and standing of counsel on both sides.

*Ramey*, 508 F. 2d at 1194-97.  Each of these factors weighs in favor of awarding the requested attorneys' fees.

### 1.      *The settlement provides a substantial benefit to the class*

Class Counsel's work resulted in a settlement of $4,000,000.  As explained in Plaintiffs' concurrently filed Unopposed Motion for Final Settlement Approval, after deductions for the requested attorneys' fees, costs, and class representative awards, $2,620,593.54 will be distributed to the 478 participating Plaintiffs and class members.  (Srey Decl. ¶ 11.)  Importantly, unlike some common fund settlements, no portion of the settlement will revert to Defendant. Instead, funds initially allocated to unresponsive Plaintiffs and class members are reallocated to participating class members on a *pro rata* basis.  This reallocation results in an average recovery of $5,482.41, an increase of $375 from the initial average allocation.  (Srey Decl. ¶ 12.)  Separate from the monetary considerations, the benefit of the settlement is also evidenced by the fact that the settlement equates to each class member receiving 6.25 hours of overtime pay for every week they worked as a MLO during the statutory period.  (*Id.*)

Further, the settlement provides immediate relief to class members, eliminating additional risks they would otherwise face if the litigation continued to summary judgment on the merits, trial, and appeal.  (*Id.* ¶ 13.)  Absent settlement, the parties would have engaged in additional and extensive discovery (including written discovery and multiple depositions of Plaintiffs and management witnesses), as well as additional motion practice (decertification of the FLSA collective and Rule 23 Ohio class, summary judgment).  (*Id.*)  While Plaintiffs maintain that they would ultimately prevail on these issues, they recognize the inherent risk of litigation, particularly in this unique area of the law.  *See, e.g.*, *Henry v. Quicken Loans, Inc.*, 698 F.3d 897

(6th Cir. 2012) (after eight years of litigation, affirming jury verdict that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA); *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA). By agreeing to the Settlement, those risks are eliminated and participating class members are guaranteed to receive an excellent recovery now, rather than to possibly receive a recovery years from now.

### 2. Society's stake in rewarding attorneys who produce the benefits to the class in order to maintain an incentive to others

Society's stake in rewarding attorneys who bring class action wage-and-hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *4 (S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts of the attorneys who bring wage-and-hour cases, as these are frequently complex matters."). Here, Class Counsel recovered overtime wages for 478 MLOs. Without this lawsuit, few of these individuals would have known about their potential claims, let alone had the motivation or resources to pursue them. *See Kritzer v. Safelite Solutions, LLC*, No. 2:10-cv-0729, 2012 WL 1945144, at *9 (S.D. Ohio May 30, 2012) ("Society has a stake in rewarding attorneys who achieve a result that the individual class members probably could not obtain on their own."). Moreover, the requested award—33% of the common fund—is within the range approved by Courts in this district, but not so high that it would constitute a windfall. *See Gonter v. Hunt Valve Co., Inc.*, 510 F.3d 610, 616 (6th Cir. 2007). This is especially true in light of the extensive work performed by Class Counsel over more than three years of litigation, the additional work Class Counsel has committed to perform to ensure that participating Plaintiffs and class members receive the settlement payments and tax documents, receive reissued checks as necessary, and are aware of

the settlement check void date. (Srey Decl. ¶ 18.) Accordingly, this factor supports the requested fees.

### 3. *Class Counsel undertook considerable risk of nonpayment in litigating this case on a contingency basis*

Despite the risks associated with prosecuting this case (*e.g.*, conditional and class certification, Defendant's multiple defenses, the extent to which MLOs worked overtime hours, and willfulness), Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind. (Srey Decl. ¶ 34.) Importantly, at the time Plaintiffs filed their Complaint, there were no obvious indications that a settlement would be reached or that the litigation would be successful. (*Id.*) Indeed, since then, the issue of whether loan officers like the MLOs at issue in this case are entitled to overtime pay has become more and more unclear, with federal courts, juries, and the Department of Labor reaching varying conclusions. *See, e.g.*, *Henry*, 698 F.3d 897 (6th Cir. 2012) (affirming summary judgment and jury verdict for employer finding that loan officers were properly classified as exempt); Administrator's Interpretation No. 2010-1, 2010 WL 1822423 (Mar. 24, 2010) (DOL interpretation finding that MLOs should be classified as non-exempt); *Lewis v. Huntington Nat'l Bank*, 838 F. Supp. 2d 703 (S.D. Ohio 2012) (upholding DOL interpretation); *Mortgage Bankers Ass'n v. Harris*, 720 F.3d 966 (D.C. Cir. 2013) (vacating Administrator's Interpretation as improperly promulgated); *Hantz v. Prospect Mortgage, LLC*, No. 1:13CV1435 JCC/TRJ, 2014 WL 463019 (E.D. Va. Feb. 5, 2014) (granting employer's motion for summary judgment on exempt status of loan officer); *Cougill v. Prospect Mortgage, LLC*, No. 1:13CV1433 JCC/TRJ, 2014 WL 130940 (E.D. Va. Jan. 14, 2014) (denying employer's motion for summary judgment on exempt status of loan officer). Given the uncertain state of the law, and the significant hurdles to prevailing on the merits, Class Counsel would not

11

have accepted a similar case on any basis other than a continence fee basis. (Srey Decl. ¶ 36-37.) Similarly, it is unlikely that the Plaintiffs or class members would have been able to retain other attorneys under any other arrangement. (*Id.*)

Class Counsel committed just over 1,669 hours through the course of this litigation, a significant expenditure of time, all of which was devoted on a contingency basis with no guarantee of payment. (Srey Decl. ¶ 15, 34.) Among other tasks, these hours were spent performing the following tasks that were necessary and integral to the successful resolution of this case: (1) investigating the potential claims; (2) drafting the various initiating documents and the Complaint; (3) interviewing the Named Plaintiffs as well as more than 350 Opt-in Plaintiffs regarding their claims; (4) preparing and serving initial disclosures and written discovery; (5) briefing conditional certification; (6) issuing the FLSA notice, filing consent forms, and communicating with putative opt-in Plaintiffs, (7) drafting written discovery, reviewing responsive documents, and deposing witnesses relevant to Defendant's good faith defense; (8) briefing Plaintiffs' opposition to Defendant's motion for summary judgment; (9) preparing for and attending the August 2012 mediation; (10) briefing Plaintiffs' motion for Rule 23 class certification; (11) negotiating the terms of a representative discovery stipulation and conducting discovery, including two additional depositions; (12) preparing for and attending the May 2013 mediation; (13) negotiating, drafting, editing, and filing the Settlement Agreement and settlement approval papers; (14) analyzing Defendant's payroll and employment data and calculating settlement allocations; and (15) communicating with Plaintiffs and class members during the settlement notice period. (*Id.* ¶ 16.) These hours were reasonable and necessary given the breadth and scope of the issues in this case, as well as the dedicated efforts of counsel to obtain relief for the class. In addition, Class Counsel will continue to represent the Plaintiffs and class

12

members throughout the next twelve months to ensure that the settlement funds and tax documents are disseminated in a timely fashion and mailed to correct addresses, and to answer questions about the settlement. (*Id.* ¶ 18.) This factor thus weighs in favor of awarding the requested fee. *See Gentrup*, 2011 WL 2532922, at *4 (finding that plaintiffs' counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee).

### 4. *The lodestar cross check supports approval of the requested fees*

As a way to "cross check" the fourth *Ramey* factor, the value of the services rendered, district courts calculate the lodestar figure and compare it with the amount requested under the percentage approach. *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761. The number of hours expended "creating, protecting, or preserving the fund recovered" is then multiplied by a "reasonable hourly rate" to produce a lodestar figure. *Id.* The reasonable hourly rate is "is determined by reference to the prevailing market rates in the relevant community." *Lowther*, 2012 WL 6676131, at *4. The appropriate market to determine the reasonable hourly rate is that of similar types of cases, in terms of both size and complexity. *Id.* (quoting *McHugh v. Olympia Entm't, Inc.*, 37 F. App'x 730, 740 (6th Cir. 2002)). The FLSA is an area of the law practiced by a small subset of the bar, with even fewer attorneys capable of handling a case of this size and complexity, against a Defendant with seemingly unlimited resources. Accordingly, in calculating lodestar, Class Counsel utilized the rates they would charge in their home courts and for paying clients. These rates were recently approved for purposes of the lodestar cross-check in two recent cases. *See Heibel v. U.S. Bank Nat'l Assoc.*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014) (granting motion for final approval and awarding fees and costs to

13

class counsel Nichols Kaster and others) (Ex. 4); *Struck v. PNC Bank N.A.*, No. 2:11-cv-00982-ALM-NMK (S.D. Ohio May 16, 2014) (same) (Ex. 5).

The lodestar figure may be increased by "multiplying it by a factor it deems reasonable (the 'lodestar multiplier')." *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761. A variety of factors are examined in determining the appropriate multiplier, including, "the nature of the case, the market for such legal service, the risk involved and the results achieved." *Id.* The multiplier is designed to reward Class Counsel for taking on more risk, providing "superior quality" representation, or achieving a greater settlement. *Id.* Courts frequently award multipliers between one and four. *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F.3d 283, 341 (3d Cir. 1998) (quoting 3 Herbert Newberg & Alba Conte, Newberg on Class Actions, § 14.03 at 14-5 (3d ed. 1992)). The same is true in this district. *See, e.g.*, *Lowther*, 2012 WL 6676131, at *5-6 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)); *Bailey v. AK Steel Corp.*, No. 1:06-cv-468, 2008 WL 553764, at *3 (S.D. Ohio Feb. 28, 2008) ("The multiplier [of 3.04] is fully warranted given the complexity of the case, the attendant risks, the size of the settlement recovered, and class counsels' continuing obligations to the class, and it is well within the range of multipliers awarded in similar litigation."); *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 767 (lodestar multiplier of 6.0, noting that the typical lodestar multiplier in large class actions "ranges from 1.3 to 4.5"). *See also Heibel*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014) (granting motion for final approval and awarding fees and costs to class counsel Nichols Kaster and others with multiplier of 3.28.) (Ex. 4); *Struck*, No. 2:11-cv-00982-ALM-NMK (S.D. Ohio May 16, 2014) (same, with multiplier of 2.64) (Ex. 5).

Class Counsel's total lodestar through June 10, 2014, is $512,885.00. (Srey Decl. ¶ 15.) The lodestar multiplier is thus 2.57, well within the range typically approved in this district. The reasonableness of the fee award and the multiplier are further evidenced by the fact that Class Counsel will expend additional time and resources over the next twelve months in order to oversee the disbursement of the settlement funds. (Srey Decl. ¶ 18.) Taking all of this into consideration, the lodestar crosscheck thus illustrates that Class Counsel's fee award is well within the range of reasonability, particularly for a case in which the class's reaction has been positive and considering the time and labor expended, the magnitude of the litigation, the risks, the monetary results achieved for the class, and the amount of the fee in proportion to the monetary settlement.

### 5. The complexity of this litigation weighs in favor of the requested award

Wage-and-hour collective and class actions are "frequently complex matters." *Gentrup*, 2011 WL 2532922, at *4; *see also Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013) (describing the unique risks and complexities in a wage-and-hour class action involving misclassification allegations). This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA and the OWA. Determining whether Defendant's MLOs were entitled to overtime compensation under these laws—at summary judgment or at trial—would have involved additional extensive discovery and detailed analysis of damages, potentially requiring the use of an expert. (Srey Decl. ¶ 13.) At the same time, however, Plaintiffs faced several procedural hurdles that may have prevented them from even getting to the merits: Defendant's motion to decertify the FLSA collective and Rule 23 class. (*Id.*) Resolving the merits, damages, and procedural issues would have been risky, costly, and time consuming. (*Id.*)

Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### 6.     *Class counsel's skill supports approval*

The skill and efficiency of attorneys is evidenced by their local reputations as well as their experience and expertise in the area. *Enter. Energy Corp. v. Columbia Gas Transmission Corp.*, 137 F.R.D. 240, 249 (S.D. Ohio 1991). In assessing the skill of Class Counsel, it is also important to assess the quality of defense counsel as well, to determine the quality of service Class Counsel rendered. *See Lowther*, 2012 WL 6676131, at *3 (citing *Smillie v. Park Chem. Co.*, 710 F. 2d 271, 275 (6th Cir. 1983)). Class Counsel in this matter is Nichols Kaster, PLLP. As discussed in the Declaration of Rachhana T. Srey, Class Counsel are qualified, experienced, and have substantial credentials representing plaintiffs, particularly employees, in class and collective action litigation. (Srey Decl. ¶ 19-29; Ex. 1.) Likewise, Defendant is represented by experienced and skilled local counsel at Jackson Lewis, and attorneys with Littler Mendelson, P.C., which is the largest employment and labor law firm in the country.[2] The lawyers representing Defendant have extensive experience representing employers in wage-and-hour class and collective actions. Accordingly, the professional skill and standing of counsel on both sides is substantial and this factor supports approval of the requested fee award.

### 7.     *The requested fee award is comparable to fee awards in similar cases*

Lastly, although not one of the *Ramey* factors, comparing the fees requested in this case to the fees awarded in similar cases further evidences the reasonableness of Class Counsel's request for an award of 33% of the settlement fund. *See, e.g., Heibel*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014) (approving attorneys' fees of 33%) (Ex. 4); *Struck*, No. 2:11-

---

[2] *See* http://www.littler.com/about (last visited June 3, 2014).

cv-00982-ALM-NMK (S.D. Ohio May 16, 2014) (same) (Ex. 5); *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-CV-1061, 2013 WL 2295880, at *6 (S.D. Ohio May 24, 2013) (awarding 33% of the settlement funds in class action case); *Rotuna v. W. Customer Mgmt. Grp., LLC*, No. 4:09CV1608, 2010 WL 2490989, at *7-8 (N.D. Ohio June 15, 2010) (approving attorneys' fees of one-third of the settlement amount in wage-and-hour class and collective action involving 1,778 employees); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving attorneys' fee award of one-third of the total settlement amount in wage-and-hour class and collective action); *In re S. Ohio Corr. Facility*, 173 F.R.D. 205, 218 (S.D. Ohio 1997), rev'd on other grounds, 24 Fed. App'x 520 (6th Cir. 2001) (approving an award of $1.4 million in fees, representing 34% of the total amount of the common fund, and noting that it is within the 20% to 50% range of reasonableness); *Brotherton v. Cleveland*, 141 F. Supp. 2d 907, 913 (S.D. Ohio 2001) (noting that attorneys' fees awards typically range from 20% to 50% of the common fund); *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 1029, 1046 decision clarified, 148 F. Supp. 2d 936 (S.D. Ohio 2001) (same).

## II.    CLASS COUNSEL'S REQUEST FOR REIMBURSEMENT OF NECESSARY EXPENSES SHOULD BE APPROVED

"Counsel for a class action is entitled to reimbursement of expenses that were adequately documented and reasonably and appropriately incurred in the prosecution of the class action." *In re Datatec Systems*, No. 04-CV-525 (GEB), 2007 WL 4225828, at *9 (D.N.J. Nov. 28, 2007) (quoting *In re Safety Components, Inc. Sec. Litig.*, 166 F. Supp. 2d 72, 108 (D.N.J. 2001)); *see also In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 519 (W.D. Pa. 2003).

Class Counsel request reimbursement of expenses in the amount of $39,406.46 to cover costs associated with court fees, case marketing, process server fees, mediations, conference call charges, travel and accommodations (for client meetings, the initial pretrial conference,

17

depositions, mediations, strategy meetings, and the final approval hearing), legal research, deposition transcripts, photocopies, PACER fees, and postage. (Srey Decl. ¶ 38-40.) These expenses, while substantial, are reasonable given the full scope of the litigation, are documented in Class Counsel business records, are reasonable in relation to the Settlement Fund, and should be awarded. (*Id.*) Moreover, they are consistent with awards in other class action cases. *See Heibel*, No. 2:11-cv-00593-EAS-NMK (S.D. Ohio May 21, 2014) (approving reimbursement for nearly identical costs) (Ex. 4); *Struck*, No. 2:11-cv-00982-ALM-NMK (S.D. Ohio May 16, 2014) (same) (Ex. 5); *In re Packaged Ice Antitrust Litig.*, No. 08-MDL-01952, 2012 WL 5493613, at *8 (E.D. Mich. Nov. 13, 2012) (approving costs to plaintiff's counsel related to travel, telephone, printing, postage, federal express, Westlaw and IT services); *In re BankAmerica Corp. Sec. Litig.*, 228 F. Supp. 2d 1061, 1066 (E.D. Mo. 2002) (awarding approximately $1.7 million to plaintiffs' counsel as reimbursement for out-of-pocket expenses advanced during the litigation including "expert witnesses; computerized research; court reporting services; travel expenses; copy, telephone and facsimile expenses; mediation; and class notification.").

## III. THE PROPOSED CLASS REPRESENTATIVE AWARDS ARE REASONABLE

Plaintiffs request that the Court approve class representative awards totaling $20,000 ($10,000.00 each) to the two Named Plaintiffs. Courts in the Southern District of Ohio have approved incentive awards for class representatives after consideration of several factors, including their actions to protect the rights of the class members, whether those actions resulted in a substantial benefit to the class members, whether the class representative assumed any direct or indirect financial risk, and the amount of time and effort spent pursuing the litigation. *See Johnson*, 2013 WL 2295880, at *5 (citing *Hainey v. Parrott*, 617 F. Supp. 2d 668, 677 (S.D. Ohio 2007)).

18

Here, the modest enhancement awards appropriately compensate each Named Plaintiff for their time and effort in prosecuting the claims asserted in this action. Both Plaintiffs have made significant contributions to the litigation, and without their valuable assistance and participation, this case would not have been initiated. (Srey Decl. ¶ 41-42.) They provided key information to Class Counsel that considerably assisted in investigating, filing, litigating, and ultimately resolving this action. (*Id.*) They also communicated with Class Counsel throughout the litigation, and provided significant input that impacted the course of the litigation, the settlement, and the allocation. (*Id.*) After the May 2013 mediation, they helped Class Counsel by identifying issues with Defendant's data production and identifying ineligible class members. (*Id.* ¶ 43.) Class Counsel would not have been able to correct these issues without their assistance. (*Id.*)

In addition to the Named Plaintiffs' efforts in the litigation that directly benefitted the class members, the requested enhancement payments are also reasonable for a number of other reasons. First, given the amount of the total settlement and the modest size of the awards, the awards do not significantly reduce the amount of settlement funds available to the Plaintiffs and class members. Second, awards like this advance public policy by encouraging other individuals to come forward to protect the rights of others in representative actions, particularly those involving employment statutes. Third, the enhancement payments recognize that, unlike other class members, the Named Plaintiffs provided Defendant with additional consideration in the form of a general release. (Settlement Agreement, Doc. 175-2 ¶ 5.1(c).) Fifth, Defendant does not oppose the award of the requested enhancement awards. (*Id.* ¶ 2.5(d).) Finally, the requested enhancement awards are in line with those approved by Courts in this circuit in similar cases. *See e.g.*, *Johnson*, 2013 WL 2295880, at *5 (approving $12,500 enhancement award to

19

the named plaintiff from a $452,380 settlement); *Dillworth*, 2010 WL 776933, at *7 (approving

enhancement awards of $6,000 and $4,000); *Heibel v. U.S. Bank Nat'l Assoc.*, No. 2:11-cv-

00593-EAS-NMK (S.D. Ohio May 21, 2014) (approving incentive payments of $5,000 to

original named plaintiffs) (Ex. 4); *Struck*, No. 2:11-cv-00982-ALM-NMK (S.D. Ohio May 16,

2014) (same) (Ex. 5). As such, the requested enhancement payments are reasonable and should

be approved.

<u>**CONCLUSION**</u>

For all of the reasons stated above, Plaintiffs respectfully request that the Court award the

requested attorneys' fees, costs, and class representative awards, and enter the proposed Order

submitted with the concurrently filed Motion for Final Settlement Approval.

Respectfully submitted this 11th day of June, 2014.

**NICHOLS KASTER, PLLP**

*/s/ Rachhana T. Srey*
Rachhana T. Srey, MN Bar No. 340133*
Paul J. Lukas, MN Bar No. 22084X*
Matthew H. Morgan, MN Bar No. 304657*
Timothy C. Selander, MN Bar No. 0387016*
4600 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Telephone: (612) 256-3200
Facsimile: (612) 215-6870
Email: srey@nka.com
        lukas@nka.com
        morgan@nka.com
        selander@nka.com

*\*admitted pro hac vice*

**FREKING & BETZ, LLC**
Randolph H. Freking, OH Bar No. 0009158
525 Vine Street, 6th Floor
Cincinnati, OH 45202
Telephone: (513) 721-1975
Facsimile: (513) 651-2570
Email: randy@frekingandbetz.com

*Counsel for Plaintiffs and the Class*

## CERTIFICATE OF SERVICE

I hereby certify that on June 11, 2014, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

| | |
|---|---|
| Matthew H. Morgan: | morgan@nka.com, assistant@nka.com |
| Randolph Harry Freking: | randy@frekingandbetz.com, docket@frekingandbetz.com, susan@frekingandbetz.com |
| Scott A. Carroll: | scott.carroll@jacksonlewis.com, CincinnatiDocketing@jacksonlewis.com, dibenedp@jacksonlewis.com, marrss@jacksonlewis.com |
| Tim C. Selander: | selander@nka.com, assistant@nka.com |
| Anthony J. Hall: | ajhall@littler.com, evega@littler.com, nlipscomb@littler.com, ssarber@littler.com, vking@littler.com |
| Desiree C. Henderson: | dhenderson@littler.com, eluzunaris@littler.com, evega@littler.com, kmack@littler.com, ssarber@littler.com, vking@littler.com |
| Nitin Shah: | nitin.shah@usdoj.gov |
| Paul J Lukas: | lukas@nka.com, assistant@nka.com |
| Rachhana T. Srey: | srey@nka.com, assistant@nka.com |

Dated: June 11, 2014                  NICHOLS KASTER, PLLP

*/s/ Rachhana T. Srey*
 Rachhana T. Srey

*Counsel for Plaintiffs and the Class*