UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| DUSTIN SWIGART and SONIA SCHULTZ, on behalf of themselves and others similarly situated, | : : : : | Case No. 1:11-cv-88 |
| | : | Judge Timothy S. Black |
| Plaintiffs, | : : | |
| vs. | : : | |
| FIFTH THIRD BANK, | : : | |
| Defendant. | : | |

**ORDER GRANTING PLAINTIFFS' UNOPPOSED MOTION FOR
FINAL SETTLEMENT APPROVAL (Doc. 179) AND
PLAINTIFFS' UNOPPOSED MOTION FOR APPROVAL OF ATTORNEYS'
FEES, COSTS, AND CLASS REPRESENTATIVE AWARDS (Doc. 180)**

On February 11, 2011, named Plaintiffs Dustin Swigart and Sonia Schultz filed this civil action against Defendant Fifth Third Bank on behalf of themselves and all other similarly situated Mortgage Loan Officers ("MLOs") to recover overtime pay that they alleged Defendant had withheld in violation of the Fair Labor Standards Act (FLSA) and the Ohio Minimum Fair Wage Standards Act.

On August 31, 2011, the Court granted Plaintiffs' Motion for Conditional Certification and Judicial Notice. (Doc. 39). Including the two named Plaintiffs, 366 individuals returned signed opt-in consent forms, which forms Plaintiffs' counsel filed with the Court.

Defendant filed a motion for partial summary judgment on July 18, 2011, arguing that when it classified the MLOs as exempt, it relied in good faith on a series of relevant

regulatory pronouncements of the Department of Labor (DOL), including 2004 revisions to the "white-collar" exemption regulations and an Opinion Letter issued by the DOL on September 8, 2006, as well as the advice of counsel regarding its evaluation of the MLO position and interpretation of the relevant DOL regulations.  Defendant further argued that as a legal consequence of its good-faith reliance on the DOL's regulatory pronouncements and the advice of outside counsel, Plaintiffs could not recover for any claim to overtime compensation under the FLSA after September 8, 2006, pursuant to 29 U.S.C. § 259.  On May 7, 2012, the Court denied Defendant's motion, holding that "genuine issues of material fact exist as to whether Defendant relied on and conformed to the 2006 Opinion Letter."  (Doc. 144).

On December 28, 2012, the Court granted Plaintiffs' motion for Rule 23 class certification of their Ohio Minimum Fair Wage Standards Act claims, certifying a class of all persons who worked for Defendant as MLOs in the state of Ohio and were classified as exempt from statutory overtime pay requirements at any time between February 11, 2009 and January 3, 2011.  (Doc. 159).  In its Order, the Court held that the class satisfied the requirements of Rule 23(a) (numerosity, commonality, typicality, and adequacy of representatives) and the requirements of Rule 23(b)(3) (predominance and superiority).  The Court appointed Plaintiffs' counsel, Nichols Kaster, PLLP, as Class Counsel and the two named Plaintiffs as Class Representatives.  Notice issued to the 305 individuals identified by Defendant as potential class members.  Excluding any of the FLSA opt-in Plaintiffs and the nine MLOs who opted-out, there are 193 Ohio Rule 23 class members.

After participating in two mediation sessions with an experienced mediator in August 2012 and May 2013, the parties reached an agreement to resolve this case.  The terms of that agreement are memorialized in the parties' Settlement Agreement.  (Doc. 175, Ex. 1).  Without conceding the validity of Plaintiffs' claims and without admitting liability, Defendant agreed to create a Settlement Fund of $4,000,000 to resolve the litigation.

On February 19, 2014, the Court granted Plaintiffs' Unopposed Motion for Approval of Section 216(b) Settlement and for Preliminary Approval of Ohio Rule 23 Class Settlement (the "Preliminary Approval Order").  (Doc. 176).  The Preliminary Approval Order:  (1) approved of the parties' FLSA settlement; (2) confirmed the Court's prior certification of the Ohio Rule 23 class, the appointment of Nichols Kaster, PLLP as Class Counsel, and the two named Plaintiffs as Class Representatives; (3) approved of the parties' proposed settlement notice; (4) approved of the parties' proposed class action settlement procedure; and (5) scheduled a fairness hearing after the close of the settlement notice period.

Following the Court's Preliminary Approval Order, the parties' Settlement Administrator sent the Court-approved Notice to the 193 Ohio Rule 23 class members on March 12, 2014.  A similar Notice was mailed to the 327 eligible FLSA opt-in Plaintiffs. The notice informed the Plaintiffs and Ohio Rule 23 class members of the total amount of the settlement, and their right to reject, request exclusion from, or to object to the settlement.  It further stated class counsel's intention to seek attorneys' fees in the amount

of 33% of the total settlement amount.  No FLSA opt-in Plaintiff rejected the settlement, and no Ohio Rule 23 class member opted-out or objected.

On June 11, 2014, Plaintiffs filed their Unopposed Motion for Final Settlement Approval (Doc. 179) and Unopposed Motion for Attorneys' Fees, Costs, and Class Representative Awards (Doc. 180).  The Court held a fairness hearing on July 8, 2014.

## I.  CLASS SETTLEMENT

Before a district court approves a settlement, it must find that the settlement is "fair, reasonable, and adequate."  *Johnson v. Midwest Logistics Sys., Ltd.*, No. 2:11-cv-1061, 2013 WL 2295880, at *4 (S.D. Ohio May 24, 2013) (citing *UAW v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)).  In the Sixth Circuit, district courts consider seven factors in determining whether a class action settlement is fair, reasonable, and adequate:

(1) the risk of fraud or collusion;
(2) the complexity, expense and likely duration of the litigation;
(3) the amount of discovery engaged in by the parties;
(4) the likelihood of success on the merits;
(5) the opinions of class counsel and class representatives;
(6) the reaction of absent class members; and
(7) the public interest.

*UAW*, 497 F.3d at 631.  As set forth below, the settlement clearly meets the standard for final settlement approval.

### A.  The Risk of Fraud or Collusion

It is beyond dispute that the settlement was the result of arm's-length negotiations, free of collusion or fraud, conducted by experienced counsel for all parties, and achieved through a formal mediation conducted by a neutral mediator.  *See Bert v. AK Steel Corp.*,

No. 1:02-cv-467, 2008 WL 4693747, at *2 (S.D. Ohio Oct. 23, 2008) ("The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's length and without collusion between the parties."). Counsel for the parties vigorously litigated this case through conditional certification, summary judgment, and class certification, and advocated for their respective clients before and during the two full-day mediation sessions that ultimately resulted in this settlement.[1]

### B.  The Complexity, Expense, and Likely Duration of the Litigation

This factor strongly favors approval because, absent settlement, continued litigation would require additional discovery and motion practice concerning highly disputed issues, including: (1) whether MLOs are overtime-exempt under the FLSA and the Ohio Minimum Fair Wage Standards Act; (2) the extent to which MLOs worked overtime hours; (3) should Plaintiffs prevail, whether Defendant's alleged misclassification was "willful" for purposes of utilizing the FLSA's three-year statute of limitations and whether Plaintiffs were entitled to liquidated damages; (4) whether MLOs could proceed to trial on a class and/or collective basis; and (5) whether the Employee Acknowledgement Form signed by some MLOs was valid and enforceable, or whether the amounts paid to those individuals could be used by Defendant to offset their

---

[1] The mediator, John Van Winkle, Esq., is highly experienced in mediating and arbitrating complex commercial, contract, insurance coverage, and class action cases.  He has been appointed as a mediator by numerous state and federal judges, including his appointment in 2005 to mediate the multiple securities cases, derivative cases, and insurance rescission actions resulting from the accounting fraud at HealthSouth Corporation. Mr. Van Winkle is a former chair of the American Bar Association's Section of Dispute Resolution and litigated for twenty-four years before becoming a full-time mediator in 1994. *See John R. Van Winkle*, Van Winkle Baten Dispute Resolution, http://www.vanwinklebaten.com/van-winkle (last visited July 9, 2014).

obligations in this case. (Doc. 179, Ex. 1 at ¶ 13). Resolution of these complex issues would likely require summary judgment briefing, trial, and perhaps appeal, thereby delaying any potential payment (if any) for several years. (*Id.*) Rather than continue further down this path, the settlement confers a substantial and immediate benefit upon class members in the form of an average individual recovery of $5,482.41. (*Id.* at ¶ 10). This factor thus weighs in favor of approval.

### C. The Amount of Discovery Engaged in By the Parties

Since filing the complaint in February 2011, class counsel has extensively investigated the facts, claims, and defenses at issue in the case through more than 300 interviews with named and opt-in Plaintiffs, extensively reviewed thousands of documents produced by Plaintiffs and Defendant, and, in preparation for the two mediation sessions, analyzed thousands of lines of electronic data relevant to the MLOs' potential damages. (Doc. 179, Ex. 1 at ¶14). Class counsel also deposed Defendant's corporate representative, its in-house counsel, a former executive in the mortgage division, and two other witnesses regarding Defendant's databases and electronic records, and both sides extensively briefed certification issues and summary judgment on the section 259 good faith defense. (*Id.*) Accordingly, the parties were well informed of the facts, evidence, and legal issues present in this case prior to the mediation during which the Settlement was reached.

### D. The Likelihood of Success on the Merits

The settlement provides relief to class members and eliminates the risks that the parties would otherwise bear if this litigation were to continue on for more years.

As discussed above, absent settlement, the parties would have engaged in additional discovery (including written discovery and depositions), and motion practice (class decertification, FLSA collective decertification, dispositive motions on merits and damages issues). While Plaintiffs continue to believe that they would ultimately prevail on these issues, they recognize the inherent risk of litigation and trial. *See, e.g.*, *Foster v. Nationwide Mut. Ins. Co.*, 710 F.3d 640 (6th Cir. 2013) (affirming bench trial verdict that special investigators were properly classified as exempt from the overtime pay requirements of the FLSA); *Henry v. Quicken Loans, Inc.*, 698 F.3d 897 (6th Cir. 2012) (affirming a jury verdict, reached after eight years of litigation, that mortgage bankers were properly classified as exempt from the overtime pay requirements of the FLSA). By agreeing to the settlement, these risks are eliminated and participating class members are guaranteed to receive an excellent recovery now, rather than possibly receiving a recovery years from now (or not receiving any recovery ever).

### E. The Opinions of Class Counsel and Class Representatives

Class Counsel believes that this settlement is fair and reasonable both standing on its own and when viewed against other overtime settlements. (Doc. 179-1 at ¶ 15). Both of the Class Representatives fully support the settlement and have signed the Settlement Agreement and returned timely Consent to Join Settlement Forms, confirming their support for the Settlement. (Doc. 175-2 at 30; Doc. 179-3 at ¶ 13). One of the Class Representatives was present at the fairness hearing to support approval of the settlement. Accordingly, this factor weighs in favor of final approval.

### F. The Reaction of Absent Class Members

The reaction of the class also supports approval. **Out of 520 Plaintiffs and Ohio class members, none rejected, objected or excluded themselves by opting out**. (Doc. 179-3 at ¶¶ 11-12). Further, a total of 478 eligible participants—92%—accepted the terms of the settlement by submitting claim forms. (*Id.* at ¶ 13). Of the 327 eligible FLSA opt-in Plaintiffs, all but one accepted the settlement; of the 193 eligible class members, 152 accepted. (*Id.*) This overwhelmingly positive reaction to the settlement supports approval.

### G. The Public Interest

Public policy generally favors settlement of class action lawsuits. *Hainey v. Parrott*, 617 F. Supp. 2d 668, 679 (S.D. Ohio 2007) (citing *Whitford v. First Nationwide Bank*, 147 F.R.D. 135, 143 (W.D. Ky. 1992)). The Settlement provides relief for a substantial number of class members, avoids further litigation in a large and complex case, and frees the Court's judicial resources. Accordingly, the Court concludes that this factor weighs in favor of approving the proposed Settlement because the public interest is served by resolution of this action.

### H. The Settlement Notice

Finally, the content of the settlement notice, which the Court approved in its Preliminary Approval Order, fully complies with due process and Rule 23. (Doc. 176). Further, the Settlement Administrator mailed the Court-approved settlement notice to class members consistent with this Court's Preliminary Approval Order. (Doc. 179-3 at ¶¶ 5-9.). And before mailing the settlement notice, the Settlement Administrator updated

the class members' addresses utilizing the National Change of Address Database.
(*Id.* at ¶ 5). Accordingly, only two settlement notices were returned to the Settlement
Administrator as undeliverable (and the Settlement Administrator attempted but was
unable to obtain alternate addresses for those two). (*Id.* at ¶ 9). Thus, only a tiny
fraction—.38%—of the class did not have the opportunity to object, be excluded or
otherwise be heard, despite the Settlement Administrator's best efforts. As such, the
Court finds that the parties have satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B)
and due process, and that the settlement notice here constituted the best notice practicable
under the circumstances.

## I. *Cy Pres* Beneficiary

According to the Settlement Agreement, in the unlikely event that participating
class members fail to cash their settlement checks before the expiration date (ninety days
from date of issuance), those funds are to be donated to The Employee Rights Advocacy
Institute For Law & Policy, which is the parties' agreed *cy pres* beneficiary. (Doc. 175-2
at ¶¶ 4.5(d), 4.6(d)). It is unlikely that there will be any such funds, however, because at
the 45-day mark of the 90-day check cashing period, the Settlement Administrator must
provide Class Counsel with the names of all class members who have failed to cash their
settlement checks, so that Class Counsel may contact them to remind them of the
deadline. (*Id.*) Accordingly, any funds to the *cy pres* beneficiary will amount to only a
small fraction of the total settlement amount. *Kritzer v. Safelite Solutions, LLC*, No.
2:10-cv-729, 2012 WL 1945144, at *10 (S.D. Ohio May 30, 2012) (approving
distribution of uncashed settlement checks to *cy pres* beneficiaries).

9

## II.  ATTORNEYS' FEES

District courts may award reasonable attorneys' fees and expenses from the settlement of a class action upon motion under Fed. R. Civ. P. 54(d)(2) and 23(h). *Lowther v. AK Steel Corp.*, No. 1:11-cv-877, 2012 WL 6676131, at *1 (S.D. Ohio Dec. 21, 2012).  When assessing the reasonableness of a fee petition, district courts engage in a two-part analysis.  *See In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d 752, 760 (S.D. Ohio 2007).  First, the district court determines the method for calculating the attorneys' fees: either the percentage of the fund approach or the lodestar approach.  *Id.* (citing *In re DPL, Inc., Sec. Litig.*, 307 F. Supp. 2d 947, 949-51 (S.D. Ohio 2004)).  Second, the district court must analyze and weigh the six factors described by the Sixth Circuit in *Ramey v. Cincinnati Enquirer, Inc.*, 508 F. 2d 1188 (6th Cir. 1974).  *Id.*

### A.  The Court Adopts the Percentage Approach

In the Sixth Circuit, district courts have the discretion "to determine the appropriate method for calculating attorneys' fees in light of the unique characteristics of class actions in general, and the particular circumstances of the actual cases pending before the Court" using either the percentage or lodestar approach.  *In re Cardinal Health Inc. Sec. Litig.*, 528 F. Supp. 2d at 761 (citing *Bowling v. Pfizer, Inc.*, 102 F.3d 777, 779 (6th Cir. 1996)).  In this district, "the preferred method is to award a reasonable percentage of the fund, with reference to the lodestar and the resulting multiplier."  *Connectivity Sys. Inc. v. Nat'l City Bank*, No. 2:08-CV-1119, 2011 WL 292008, at *13 (S.D. Ohio Jan. 26, 2011).  Plaintiffs request that the Court adopt the percentage approach to award class counsel's attorneys' fees in the amount of 33% of the Settlement Fund, or $1,320,000.

Here, the Court finds the percentage approach is the most appropriate method for determining reasonable attorneys' fees in this case.

### B. *Ramey* Factors

In reviewing the reasonableness of the requested award, the Sixth Circuit requires district courts to consider six factors, known as the *Ramey* factors:

> (1) the value of the benefits rendered to the class;
> (2) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others;
> (3) whether the services were undertaken on a contingent fee basis;
> (4) the value of the services on an hourly basis [the lodestar cross-check];
> (5) the complexity of the litigation; and
> (6) the professional skill and standing of counsel on both sides.

*Ramey*, 508 F.2d at 1194-97. Each of these factors weighs in favor of awarding the requested attorneys' fees.

#### 1. *The Value of the Benefit*

Class counsel's work resulted in a settlement of $4,000,000. Further, the settlement provides relatively early relief to class members, and it eliminates the additional risks the parties would otherwise bear if this litigation were to continue. Absent settlement, the parties would have engaged in extensive discovery (including written discovery and multiple depositions), and contested class certification, FLSA collective decertification, and dispositive motions on merits and damages issues.

#### 2. *Society's Interest in Rewarding the Attorneys*

Society's stake in rewarding attorneys who bring class action wage and hour cases favors the requested award. *Gentrup v. Renovo Servs., LLC*, No. 1:07-cv-430, 2011 WL 2532922, at *4 (S.D. Ohio, June 24, 2011) ("[S]ociety has a stake in rewarding the efforts

11

of the attorneys who bring wage and hour cases, as these are frequently complex matters.").

### 3. The Services Rendered Were on a Contingent Fee Basis

Despite the risks associated with prosecuting this case, including issues related to certification, Defendant's multiple defenses, the extent to which MLOs actually worked overtime hours, and willfulness, Class Counsel took this case solely on a contingency fee basis and were prepared to make this investment with the very real possibility of an unsuccessful outcome and no fee of any kind.  Further, Class Counsel have not been compensated for any time or expense since the litigation began in 2011, consistent with the fee agreement entered into between Plaintiffs and class counsel.  This factor thus weighs in favor of awarding the requested fee.  *See Gentrup*, 2011 WL 2532922, at *4 (finding that plaintiffs' counsel had made "significant investments of time and [had] advanced costs but [had] received no compensation in this matter" weighed in favor of the requested fee).

### 4. The Value of the Services on an Hourly Basis

Although performing a cross-check on the percentage method using class counsel's lodestar is optional, Class Counsel's request for attorneys' fees is also reasonable under a lodestar analysis.  Based on their extensive experience litigating collective and class actions, Class Counsel were able to litigate and settle the claims efficiently.  Class Counsel's cumulative lodestar of $512,885, compared to its requested fee of $1,320,000, yields a lodestar multiplier of 2.57, which is consistent with other risk multipliers approved in complex class actions  in  this  Circuit.  *See, e.g.*, *Lowther*, 2012

WL 6676131, at *5-6 (awarding $1,275,000 in fees with a lodestar cross-check of $416,669.48 (3.06 multiplier)).

### 5. *Complexity of the Litigation*

Wage-and-hour collective and class actions are, by their very nature, complicated and time-consuming. *See Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 479-80 (S.D.N.Y. 2013). This is particularly true here, where Plaintiffs alleged overtime claims under the FLSA, and under the state laws of Ohio. Resolving the procedural issues, the merits, and damages would have been risky, costly, and time consuming. Accordingly, the litigation was difficult and complex, and this factor weighs in favor of awarding the requested fees.

### 6. *The Professional Skill and Standing of Counsel*

The professional skill and standing of counsel on both sides is substantial. As discussed in the Declaration of Rachchana T. Srey, Esq., all Class Counsel are highly qualified and highly experienced, and they all have substantial credentials in federal courts, class and collective action litigation. The lawyers representing Defendant have extensive experience in this area as well. Accordingly, this factor supports approval of the requested fee award.

### C. Comparison to Attorneys' Fees in Similar Cases

An award of 33% of the total settlement fund is well within the range of fees requested in class and collective actions in Ohio federal district courts. *See, e.g.*, *Johnson*, 2013 WL 2295880, at *6 (awarding attorney fees and expenses to class counsel in an amount of 33% of the settlement funds in class action case); *Kritzer*, 2012 WL 1945144, at *9-10 (awarding attorney's fees and costs up to $235,000 out of a settlement

of $455,000 (52% of total recovery) in a hybrid FLSA collective and Ohio class action for unpaid overtime)).

## III.  REIMBURSEMENT OF EXPENSES

Class Counsel seeks $39,406.46 in out-of-pocket litigation expenses.  All of these costs were reasonable and necessary in connection with litigating and resolving this case and are reimbursable.  *See In re Packaged Ice Antitrust Litig.*, No. 08-mdl-1952, 2012 WL 5493613, at *8 (E.D. Mich. Nov. 13, 2012) (approving costs to plaintiff's counsel related to travel, telephone, printing, postage, Federal Express, Westlaw and IT services).

## IV.  CLASS REPRESENTATIVE AWARDS

The modest class representative award requests of $10,000 to each of the two Class Representatives have been tailored to compensate each Class Representative in proportion to his or her time and effort in prosecuting the claims asserted in this action. *See e.g.*, *Heibel v. U.S. Bank N.A.*, No. 2:11-cv-593, ECF No. 164 (S.D. Ohio May 21, 2014) (approving incentive payments of $5,000 to original named plaintiffs); *Johnson*, 2013 WL 2295880, at *5 (approving a $12,500 enhancement award to the named plaintiff from a $452,380 settlement); *Dillworth v. Case Farms Processing, Inc.*, No. 5:08-cv-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (approving enhancement awards of $6,000 and $4,000).

## V.  CONCLUSION

Having considered the Unopposed Motion for Final Approval, the Unopposed Motion for Attorneys' Fees, Costs, and Class Representative Awards, the supporting memoranda, and the complete record in this Case, and for good cause shown:

1. The Court hereby **GRANTS** the Unopposed Motion for Final Approval and approves the settlement as set forth in the Settlement Agreement under Rule 23 and the FLSA. The Court, for purposes of this Order, adopts all defined terms set forth in the Settlement Agreement. The Court finds that the settlement is fair, reasonable, adequate, and it is not a product of collusion. *See* Fed. R. Civ. P. 23(e); *Kritzer*, 2012 WL 1945144, at *6. The Court finds that this action satisfies the requirements of Rule 23 for settlement purposes only and further finds that the class has at all times been adequately represented by the Class Representatives and Class Counsel. The notice approved by the Court was provided by first class direct mail to the last-known address of each of the individuals identified as class members. In addition, follow-up efforts were made to send the notice to those individuals whose original notices were returned as undeliverable. The notice adequately described all of the relevant and necessary parts of the proposed Settlement, and class counsel's motion for an award of attorneys' fees and costs. The Court finds that the notice given to the class fully complied with Rule 23, was the best notice practicable, satisfied all constitutional due process concerns, and provides the Court with jurisdiction over the class members. The Court has concluded that the Settlement, as set forth in the Settlement Agreement executed by the parties, is fair, reasonable, and adequate under state and federal laws, including the Fair Labor Standards Act, 29 U.S.C. § 201, *et. seq.* The Court finds that the uncertainty and delay of further litigation strongly supports the reasonableness and adequacy of the $4,000,000 settlement amount established pursuant to the Settlement Agreement.

2.      Any unclaimed funds that remain under the terms of the parties' Settlement Agreement shall be distributed to the following *cy pres* beneficiary designated by the parties and approved by the Court: The Employee Rights Advocacy Institute For Law & Policy located in San Francisco, California.

3.      The settlement is hereby **APPROVED** in its entirety.

4.      The Settlement Fund shall be dispersed in accordance with the Settlement Agreement as detailed in Plaintiffs' Unopposed Motion for Final Settlement Approval.

5.      Pursuant to the Settlement Agreement, the Court approves awards in the amount of $10,000 each to Class Representative:   Dustin Swigart and Sonia Schultz.

6.      Plaintiffs' Unopposed Motion for Attorneys' Fees, Costs, and Class Representative Awards is **GRANTED**.  Class C

7.      Class Counsel are awarded attorneys' fees in the amount of $1,320,000.00, and litigation expenses and costs in the amount of $39,406.46.

8.      The claims of the following individuals who opted-in to this action but whom are not eligible to participate in the Settlement as explained in the Court's Preliminary Approval Order are **DISMISSED WITHOUT PREJUDICE**: Ty Alday, Kevin Baustian, Kevin Brant, Mickey Campbell, Jeffrey Crockett, Felicia Greene, Darryl Grier, Matthew Harris, John Hildebolt, Delone Jones, Andrew Lusk, Justin Lynott, Jeffrey McDermand, Jerry Middleton, Shawn Minor, Rebecca Mitchell, Blanca Morey, Carrie Mudd, Wanda Negrin, Cindy Polverino, Jonathan Prieskorn, Keri Abed, Rita Cordova, Shane Desimone, Domenick Digaetani, Sandra Gardner, Stephen Jeselnik,

Brian Landis, Timothy Lernihan, Mary Murphree, Richard Trew, Rosalba Verdin, Tamara Von Waldner, and Lance Worrell.

9.  As provided in the Settlement Agreement, all Ohio Rule 23 class members who did not opt out of the Settlement have released all Ohio Rule 23 Released Claims against the Defendant Releases as defined in the Settlement Agreement.

10.  As provided in the Settlement Agreement, all Participating Claimants who properly and timely submitted Consent to Join Settlement Forms have released all Ohio Rule 23 Released Claims and all Section 216(b) Released Claims against the Defendant Releasees as defined in the Settlement Agreement.

11.  As provided in the Settlement Agreement, FLSA opt-in Plaintiff Melinda Spieles, who did not return a FLSA Claim Form is **DISMISSED WITHOUT PREJUDICE** and her statute of limitations is tolled for 30 days so that she may re-file her claims if she wishes to do so.

12.  This case is hereby **DISMISSED WITH PREJUDICE**, with each party to bear his, her, or its own costs, except as set forth in this Order, and this Court expressly retains exclusive jurisdiction to enforce the Stipulation and Settlement Agreement, including over disbursement of the Settlement Amount.

13.  The Court hereby enters its final Order approving the terms of the Settlement.  The Clerk shall enter judgment accordingly pursuant to Rule 58 of the Federal Rules of Civil Procedure.

     **IT IS SO ORDERED**.

                                   _s/ Timothy S. Black_
Date:  July 11, 2014               Timothy S. Black, United States District Judge